ZAVELL AND ASSOCIATES, INC., Plaintiff-Appellee, v. CCA INDUSTRIES, INC., Defendant-Appellant.

First District (3rd Division)   Nos. 1—91—2380, 1—91—2755 cons.

Opinion filed December 29, 1993.—Rehearing denied February 4, 1994.

Rudnick & Wolfe, of Chicago (Mark L. Shapiro and John E. Mitchell, of counsel), for appellant.

Jenner & Block, of Chicago (Jeffrey L. Elegant and Susan L. Theiss, of counsel), for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This case arises out of the breach of a manufacturer's sales contract, wherein CCA Industries, Inc. (CCA), retained Zavell & Associates, Inc. (Zavell), to be CCA's sales representative in the upper Midwest. Zavell obtained orders from retailers such as Walgreen's and transmitted them to CCA for manufacturing. After shipment of the goods and an invoice to retailers, the retailers would send payment to CCA, which then paid a commission to Zavell.

The dispute in this case concerns when payment of commissions is due. The relevant paragraph of the agreement reads as follows:

> "Manufacturer will pay to Representative commission due them as indicated above only on monies paid by the customer. Any returns or credits, deducted by customers from invoice on which the Manufacturer's has paid the Representative a commission, will be deducted from future payments of the Manufacturer to the Representative."

Appellant CCA argues that this type of payment scheme creates an incentive for the sales representative to make sure that the customer pays on a timely basis. On the other hand, Zavell contends that another paragraph controls the timing of commission payments. Paragraph 12 of the agreement states:

> "Manufacturer will submit a complete monthly commission statement broken down into the territories covered by the Representative, together with remittances on or before the 20th day following the month of shipment."

After these agreements were in operation, one of Zavell's biggest customers, Walgreens, became late in paying its invoices to CCA. Walgreens would typically pay 150 to 160 days late. This created a

cash flow problem for CCA, which was shipping large quantities of goods to Walgreens without a payment on account. Despite this problem, CCA still continued paying Zavell's commissions, but deducted a "20% holdback" the month after orders were shipped.

As the months passed, CCA was getting further ahead in paying commissions on past-due accounts. By January 1988, CCA had paid $7,874 in commissions for orders totalling over $100,000 from Walgreens, even though Walgreens did not make payments to CCA from December 1987 to mid-March 1988.

On February 26, 1988, CCA sent a notice of termination to Zavell effective March 1988. By the end of March, Walgreens owed CCA over $423,000 in past-due debts from orders procured by Zavell. Although some payments were made by April, Walgreens still owed CCA $212,970. After Zavell's termination, CCA sent Zavell a final statement on commissions due Zavell, reflecting Zavell would be due $19,683.91 if Walgreens paid its bills in full.

Zavell then claimed that it was owed $32,000. However, Zavell's vice-president of finance, Jeffrey Elegant, by a letter dated June 21, 1988, later revised this claim to $21,811.76. At this point, the parties were only about $2,000 apart and still trying to settle the dispute. On June 24, 1991, CCA's president Berman spoke to Elegant on the phone and agreed to settle the dispute for $21,811.76 in exchange for a release. A check for this amount was authorized and prepared payable to Zavell. However, instead of Elegant sending a release, he served a complaint on CCA for breach of contract. Count I alleged damages in the amount of $21,811.76. Count II alleged a violation of the Sales Representative Act (Sales Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 2251 through 2253) and prayed for exemplary damages in the amount of $65,435.28.

On December 27, 1988, Judge Quinn denied Zavell's motion for summary judgment on count I and found that CCA owed Zavell $19,683.91. Summary judgment as to the exemplary damages claim was denied without prejudice. Quinn ruled that the settlement offer complied with the Sales Representative Act and that "it would be manifestly unfair to assess treble damages against the defendant for the $19,000 figure where the discrepancy between the parties is slightly more than $2,000."

This matter was then tried by Judge Elward. The evidence presented was substantially the same as that presented at the summary judgment hearing. Judge Elward found that since the agreement was silent as to whether CCA could hold back a percentage of commissions due based on failure to collect, CCA had no right to withhold 20% of Zavell's commissions. Because Judge Elward found the Sales Act had

been violated, he also found that the provision in the Act for treble damages was "mandatory" and entered damages accordingly.

The single issue we consider on appeal is whether the trial court abused its discretion in entering a judgment for treble damages under the Sales Act. An abuse of discretion will be found where the wrong legal standard has been applied or a conclusion of law reached that does not support that conclusion. *B&Y Heavy Movers, Inc. v. Fluor Contractors, Inc.* (1991), 211 Ill. App. 3d 375, 570 N.E.2d 777.

■ The applicable section of the Sales Representative Act reads as follows:

"2253. Liability of Principal.

§ 3. A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs." Ill. Rev. Stat. 1987, ch. 48, par. 2253.

The purpose of punitive damages is to punish and deter intentional or egregious conduct and they must be awarded cautiously. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E. 2d 353.) The standard for awarding such damages is willful and wanton conduct or vexatious refusal to pay. *Kleidon v. Rizza Chevrolet, Inc.* (1988), 173 Ill. App. 3d 116, 527 N.E.2d 374.

■ We find that, based upon the record in this case and the prior settlement agreement of the parties, the trial court abused its discretion in awarding exemplary or punitive damages. There was no "willful and wanton" conduct present by CCA in this case, nor was it even alleged by the parties. Moreover, the parties had reached an amicable resolution prior to the institution of this suit.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby reversed.

Reversed.

RIZZI and CERDA, JJ., concur.