**HEDRICK–WALKER ASSOCIATES, INC., Plaintiff,**

v.

**VIKTRON TECHNOLOGIES, INC., Defendant.**

**No. 94 C 7330.**

United States District Court, N.D. Illinois, Eastern Division.

March 6, 1995.

**120**

Leonard A. Nelson, Chicago, IL, for plaintiff.

Cary S. Fleischer, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Hedrick–Walker Associates, Inc. ("Hedrick–Walker") has sued Viktron Technologies, Inc. ("Viktron") for an asserted violation of the Illinois Sales Representative Act (the "Act," 820 ILCS 120/0.01 to 120/3 [1]). More specifically, Hedrick–Walker complains of Viktron's nonpayment of commissions that Hedrick–Walker says it earned on one of the accounts that it had handled as a "sales representative" for Viktron before the parties' agreement in that respect was terminated by Viktron's July 8, 1994 notice of termination. Viktron has paid all other commissions claimed by Hedrick–Walker on all other accounts, even commissions on sales completed after the notice of termination. Viktron resists this one Hedrick–Walker claim because Viktron says the customer involved is a "house account" that was neither solicited nor procured by Hedrick–Walker.

Because Hedrick–Walker invokes federal jurisdiction on diversity-of-citizenship grounds under 28 U.S.C. § 1332(a) and because it is undisputed that the parties' citizenship is indeed diverse, the determinative issue for the existence or nonexistence of subject matter jurisdiction in this District Court is the presence or absence of more than $50,000 in controversy between the litigants. And because the total amount of the disputed commissions is just $21,251.33 (Complaint ¶¶ 11–12), Hedrick–Walker's ability to stay in federal court hinges on its ability to recover an adequate amount of punitive damages under Act § 3:

> A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

Viktron has challenged the existence of the requisite amount in controversy, and the parties have submitted both factual statements and legal memoranda addressing the issue. As is true of any state statute, Act § 3 means what the Illinois courts say about it. And although many cases that apply *Erie v. Tompkins*, doctrine characterize the federal courts' role in that respect as a predictive one—seeking to divine how the Illinois Supreme Court would resolve any substantive matters of state law—it is equally true that in the absence of a definitive Illinois Supreme Court decision, recent decisions by the Illinois Appellate Courts should be followed by the federal courts unless some good reason appears for believing that the Illinois Supreme Court would disavow them.

In this instance the Illinois Supreme Court teaches specifically that the award or denial of punitive damages (the clear category into which damages awardable under Act § 3 fall) "is a matter normally reserved to the trial judge" (*Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 414, 150 Ill.Dec. 510, 514, 563 N.E.2d 397, 401 (1990) and cases cited there). And not just one but two Illinois Appellate Courts have decided during this past year

---

1. Further citations to the Act will take the form "Act § —," reflecting its internal numbering by simply omitting the prefatory "820 ILCS 120/."

that despite the apparently mandatory language of Act § 3 ("shall be liable in a civil action for exemplary damages"), such damages are *not* to be awarded unless the nonpayment situation presented to the trial judge is a highly egregious one.

In *Zavell & Assoc., Inc. v. CCA Indus., Inc.*, 257 Ill.App.3d 319, 195 Ill.Dec. 586, 628 N.E.2d 1050 (1st Dist.1994) the trial judge had found that a violation of the Act coupled with its "mandatory" provision for exemplary damages required the granting of such damages. But the Appellate Court found that decision was an abuse of discretion, stating a materially more demanding test (*id.* at 322, 195 Ill.Dec. at 588, 628 N.E.2d at 1052 (citations omitted)):

> The purpose of punitive damages is to punish and deter intentional or egregious conduct and must be awarded cautiously. The standard for awarding such damages is willful and wanton conduct or vexatious refusal to pay.

Even more recently *Maher & Assoc., Inc. v. Quality Cabinets*, 267 Ill.App.3d 69, 203 Ill.Dec. 850, 640 N.E.2d 1000 (2d Dist.1994) dealt even more expansively with the issue. Here is what that court said (*id.* at 80, 203 Ill.Dec. at 858–59, 640 N.E.2d at 1008–09 (citations except for *Loitz* omitted)):

> Although the statute makes no mention of bad faith or culpability, case law in this State makes it clear that punitive damages should not be awarded absent a finding of culpability that exceeds bad faith.
>
> "Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." (*Loitz v. Remington Arms Co.* (1990), 138 Ill.2d 404, 414, 150 Ill.Dec. 510, 563 N.E.2d 397.) As such, punitive damages may be awarded "only for conduct involving an element of outrage similar to that normally found in crime. The conduct must be outrageous, i.e., defendant's acts are done with an 'evil motive' or with 'reckless indifference' to the rights of others." Our supreme court declared in *Loitz* that the degree of culpability required for the imposition of punitive damages is that which

"approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." *Loitz*, 138 Ill.2d at 416, 150 Ill.Dec. 510, 563 N.E.2d 397.

What Hedrick–Walker has set out here does not begin to approach that level of outrageousness necessary to trigger the imposition of punitive damages under Act § 3. Accordingly federal subject matter jurisdiction is lacking because of the inadequacy of the amount in controversy, and this action is dismissed (obviously without prejudice to its being refiled in a state court of competent jurisdiction).

One last word should be said. This Court has long found it difficult to understand why in this type of situation, with the existence of federal jurisdiction so highly questionable under any view of the matter, any litigant would seek to pursue the matter in a limited-jurisdiction federal court rather than taking the safe path of suing in a state court of general jurisdiction. One of the most treacherous aspects of any subject matter jurisdictional issue is that the lack of such jurisdiction may be raised at any time, even on appeal (and it is of course the duty of every federal court to inquire into such matters sua sponte even if the litigants do not). What that means is that a losing party—and that means either party, whether plaintiff or defendant—has a free shot at attacking an ultimate judgment on jurisdictional grounds, sending the parties back to square one (see *Ross v. Inter–Ocean Ins. Co.*, 693 F.2d 659, 662–63 (7th Cir.1982) for a dramatic illustration of that principle). Under those circumstances no well-advised litigant should take the chance that its position favoring such jurisdiction may turn out to be wrong. This case is no exception.