Roger **KNOWLTON** d/b/a **RGK**
Company, **Plaintiff,**

v.

**VIKTRON LIMITED PARTNERSHIP,**
Defendant.

No. 95–CV–0006 (DRH).

United States District Court,
E.D. New York.

Jan. 23, 1998.

Ciarelli & Dempsey, Melville, NY by John
Ciarelli, for Plaintiff.

Chuhak & Tecson, P.C., Chicago, IL by
Cary Fleischer, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is defendant's motion, made pursuant to Federal Rules of Civil Procedure 50 and 59, for post-judgment relief, as well as plaintiff's motion, made pursuant to provisions of the Illinois Sales Representative Act, (the "Sales Act") 820 ILCS 120/3, for attorney's fees, costs and prejudgment interest.

## BACKGROUND

Plaintiff sued defendant for unpaid commissions. The jury awarded him $80,245.06 for pretermination commissions (representing the difference between what defendant paid and the amount plaintiff sought as per a written contract between the two); $70,196.70 for post-termination commissions; and $75,000 in exemplary damages. The present motions followed.

Defendant's motion is multifaceted. It argues (1) that presenting the issue of punitive damages to the jury constituted error; (2) that the judgment for pre-termination commissions should be either vacated, or reduced to $59,249.08; and (3) that, alternatively, a new trial should be granted.

In addition, defendant contends that plaintiff failed to establish a *prima facie* case and, accordingly, his claims should be dismissed. In that regard, the Court reserved decision on plaintiff's motion for judgment as a matter of law at the conclusion of plaintiff's case in chief. (Tr. at 193.)[1]

Plaintiff has cross-moved for attorney's fees and costs (based on provisions of the Sales Act), and for prejudgment interest.

## DISCUSSION

### RELIEF SOUGHT BY DEFENDANT

■ 1. *Application for Judgment as a Matter of Law as to Claims Predicated on the Sales Act.* The jury's award of punitive damages, as well as the present application

of plaintiff's counsel for attorney's fees, are based on the Sales Act. Sections 120/2 and 120/3 of that statute provide:

§ 2. All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due. Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void.

§ 3. A principal who fails to comply with the provisions of Section 2 .... shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

Neither plaintiff's original nor amended complaint contained a request for punitive damages, nor did either refer to the Sales Act. Nevertheless, in January of 1996 plaintiff specifically cited the Sales Act in his Proposed Joint Pre–Trial Order, claiming entitlement to $434,174.97 in punitive damages. Plaintiff, however, did not thereafter move to amend his complaint to include that claim.

During plaintiff's opening statement, it was reiterated that he sought not only compensatory damages, but punitive damages as well. (Tr. at 33–34.)

After the conclusion of the evidence, plaintiff requested that the Court's instruction to the jury include a claim for punitive damages based on defendant's failure to timely remit post-termination commissions as required by the Sales Act. He also moved orally to amend his pleading consistent with that request.[2] Following oral argument, that application was granted over defendant's objection. (Tr. at 368–74.) The Court's ruling in

---

1. Citations to "Tr. at _____." refer to the trial transcript.

2. Although plaintiff identifies subdivision (a) of Rule 15 of the Federal Rules of Civil Procedure

as the basis for his application, (Pl.'s Mem. in Opp'n at 3), subdivision (b) of that Rule also seems to be applicable in that the issue was tried with the "implied consent" of defendant.

that regard, rather than being reiterated here, is incorporated by reference. To what was said then, however, certain additional observations would appear to be in order.

Defendant drafted the contract between the parties. That contract provides that it shall be governed solely by Illinois law. The Illinois statute presently under discussion clearly pertains to the present litigation.[3] Under the circumstances, therefore, it would appear that plaintiff would have been entitled to have the Court charge the applicable provisions of the Sales Act, even absent an amendment to his complaint.[4] However, that course was not followed, and plaintiff did move to amend his pleading.

Significantly, defendant then, and now, is unable to articulate any meaningful prejudice attributable to the amendment which added the punitive damages claim. It argues that the increase in the amount of damages sought by plaintiff, although concededly based on the "same facts" initially alleged, constitutes "prejudice" *ipso facto*. (Def.'s Reply Mem. at 2.) That position is without merit. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662, 678 (S.D.N.Y. 1996) ("[A]n increase in defendants' exposure is not grounds for denying leave to amend."); *Poloron Products v. Lybrand Ross Bros. and Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976) ("[The] suggestion that '[plaintiff's] proposed 1700% increase in requested damages from $220,000 to $3,722,000 should be considered prejudicial in and of itself' ... could scarcely exert less force.") More is required to trigger a finding of prejudice sufficient to deny a Rule 15(a) motion, such as an undue prolongation of the trial, bad faith or the futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). No claim has been made along those lines, nor does defendant assert that it would have·tried the case differently absent the amendment, or that pre-

trial discovery would have taken a different course had plaintiff's complaint initially sought punitive damages as provided for under the Sales Act. Based on the foregoing, the Court adheres to its original decision permitting plaintiff to amend his complaint to assert a punitive damages claim predicated on the Sales Act.

■ In addition to maintaining that the Court erred in permitting plaintiff to amend his complaint to include a punitive damages claim, defendant contends that its conduct was not sufficiently egregious to support such an award. To prevail on this argument, defendant is required to establish that no reasonable trier of fact could conclude, based on the evidence adduced at trial, that defendant's conduct in withholding post-termination commissions fell within the ambit of Section 3 of the statute. *See generally Nembhard v. Memorial Sloan–Kettering Cancer Ctr.*, 918 F.Supp. 784, 788 (S.D.N.Y.1996) (citing *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980)).

Defendant correctly notes that Illinois courts have indicated that a mere failure to timely remit post-termination commissions is not a proper predicate for a punitive damages award. As explained in *Hedrick–Walker Assocs., Inc. v. Viktron Technologies, Inc.*, 878 F.Supp. 119, 121 (N.D.Ill.1995):

> Although the statute makes no mention of bad faith or culpability, case law in this state makes it clear that punitive damages should not be awarded absent a finding of culpability that exceeds bad faith. ... [P]unitive damages may be awarded "only for conduct involving an element of outrage similar to that normally found in crime." The conduct must be outrageous, i.e., defendant's ·acts are done with an 'evil motive' or with 'reckless indifference' to the rights of others.

---

3. The applicability of the Sales Act was presumably known to defendant, and its counsel, given the involvement of what appears to be a related entity (Viktron Technologies, Inc.), and the same attorney (Cary S. Fleischer, Esq.) in a prior dispute involving the statute. *Hedrick–Walker Assocs., Inc. v. Viktron Technologies, Inc.*, 878 F.Supp. 119 (N.D.Ill.1995).

4. *See generally* Michael H. Graham, Handbook of Federal Evidence § 201.4, at 119 (4th ed.1996) ("federal courts are obligated to judicially notice the statutes and case law of the various states.")

(citations omitted). The Court's charge included the above excerpt from *Hedrick–Walker*.

To place the issue in context, brief reference to the trial evidence is in order. Defendant argued that the total amount of post-termination commissions owed was $51,686.82 (Tr. at 440), not the higher sum that plaintiff was demanding. Plaintiff's counsel asked the jury during his summation to multiply defendant's figure by 3 in assessing punitive damages upon the ground that the withholding of that sum was outrageous under the circumstances. (Tr. at 436–37.) The jury apparently accepted, at least partially, plaintiff's position. May the resulting award of $75,000 in punitive damages stand?

The answer to the question posed in the prior paragraph is "Yes." Upon terminating its relationship with plaintiff, defendant indicated that the commissions would continue to be paid as required under paragraph 16 of the contract. (*See* Pl.'s Ex. 7, Robert J. Duke's June 1, 1994 Letter to Pl.'s Corp. RGK Co.) Yet, such payments were not made. The reason for that was explained by Robert Duke during his trial testimony, thusly:

> His reluctance to sign a contract without modifying it made me believe that we could be negotiating this or talking about this at some time in the future. So therefore[,] commission checks that were due I did not send out.[5]

(Tr. at 350.)

The "contract" that Mr. Duke was referring to in his testimony was a proposed contract proffered by defendant to plaintiff which essentially mirrored the prior agreement, except that it made Ademco a "house account." (*See* Pl.'s Ex. 9, Duke's Letter to Knowlton.) Based on the foregoing and other evidence in the record, the jury could legitimately conclude that defendant's conduct was sufficiently culpable to warrant punitive damages.

*Zavell & Assocs. v. CCA Indus., Inc.*, 257 Ill.App.3d 319, 195 Ill.Dec. 586, 628 N.E.2d 1050 (1993), cited by defendant, does not dictate a contrary conclusion. *Zavell* involved a dispute as to when payment of commissions were due. The agreement between the parties was ambiguous on the point, having conflicting provisions. Walgreens, one of Zavell's biggest customers, was chronically late in paying CCA. As a result, CCA experienced a cash flow problem. Nonetheless, CCA continued to pay Zavell, to the point where it was considerably "ahead in paying commissions on past due accounts," although it was deducting a "'20% holdback' the month after orders were shipped." 257 Ill.App.3d at 321, 195 Ill.Dec. 586, 628 N.E.2d at 1051.

Zavell was later terminated and a dispute arose as to the legitimacy of the holdbacks. The dispute was actually settled in principle by the parties. However, before the settlement could be consummated, Zavell unexpectedly sued, seeking, *inter alia*, punitive damages, which were awarded. That award, however, was flawed for a number of reasons, including the trial court's erroneous belief that punitive damages were mandatory under the Sales Act simply upon a showing that commissions due were not timely paid. In reversing, the Appellate Court noted that "[t]here was no 'willful and wanton' conduct present by CCA ... nor was it even alleged.... Moreover, the parties had reached an amicable resolution prior to the institution of this suit." 257 Ill.App.3d at 322, 195 Ill. Dec. 586, 628 N.E.2d at 1052.

In contrast, the $51,686.82 withheld here was not the result of an honest dispute as to the meaning of certain contract provisions, but rather was utilized by the employer as a "lever" to convince plaintiff to continue in their employ, but without his key account, Ademco—or, at least, the jury could have reasonably so concluded based on the evidence presented.

In sum, defendant's application to have the punitive damages portion of the jury's verdict vacated is denied.

■ 2. *Application to set Aside Jury's Award for Unpaid Commissions.* The writ-

---

5. Pre-termination practice resulted in plaintiff receiving regular commission checks, albeit often at the lower commission rates established by defendant. Exhibit 7 indicates that the same practice was to be utilized for the post-termination period.

ten agreement between the parties provided that either could terminate the relationship upon 30 days prior written notice. (*See* Pl.'s Ex. 1, para. 16.) However, neither party exercised that right until defendant did so in June of 1994. Prior to that time, the parties operated "under the terms" of the June 12, 1991 agreement. (Tr. at 249.) That agreement called for plaintiff to receive commissions at the rate of 5%. During much of the pre-termination period, however, he received commission checks based on lower percentages. In those instances, he complained, and, in the process, promoted an ongoing dialogue between the parties concerning the appropriate level of his compensation.

Defendant unsuccessively urged to the jury that plaintiff did not substantially perform his obligations under the contract and, thus, was not entitled to recover any damages. Defendant further maintained, again unsuccessfully, that, in any event, plaintiff had agreed to accept lesser percentages. For present purposes, defendant argues to the Court that, as a matter of law, plaintiff's acceptance of the lesser sums, even though under objection, caused a modification of the contract and extinguished plaintiff's rights under the 1991 agreement. *Schoppert v. CCTC Intl., Inc.*, 972 F.Supp. 444 (N.D.Ill. 1997) is cited in support of that proposition.

In *Schoppert*, an employment agreement existed between the parties which was "terminable at will." In December 1991, the employer informed Schoppert that his commissions were being lowered. Schoppert objected then and thereafter, but he continued working with the company and accepted the reduced payments.

In 1994, the employer again made an effort to revise the compensation paid to Schoppert, this time by, *inter alia*, reducing his base salary.

With respect to the 1991 reduction of commissions, the *Schoppert* court, applying Illinois law, noted that when an employment agreement is "terminable at will" it may be unilaterally modified by the employer "as a condition of its continuance." (*Id.* at 447) (citation and internal quotations omitted.) Against that backdrop, the Court found that during a 1991 meeting at which the changed

commission structure was discussed, it was "clear that [the employer] made it plain to Schoppert that the consideration for the Modification would be his continued employment." *Id.* Given that circumstance, the Court concluded that continuation of his employment was the consideration for the modification of his commissions.

As to the 1994 modification, the *Schoppert* Court found that issues of fact existed which precluded summary judgment being granted to the employer. There—unlike the situation in 1991—the employer did not contemporaneously indicate that it would fire Schoppert unless he agreed to the proposed modification; moreover, Schoppert and his employer discussed alternative proposals during the time the reduced payments were being made.

A juxtapositioning of our factual scenario with that in *Schoppert* indicates that defendant's reliance on that decision is misplaced. Here, at the very least, there were issues of fact as to whether plaintiff's continued employment with defendant was dependent upon his acceptance of the reduced commissions. Defendant presented no evidence to indicate that such an utterance was made to plaintiff. There were also discussions between the parties regarding possible modifications to the 5% commission rate which occurred between the time the commissions were reduced and plaintiff was fired. Our case, then, is more akin to the proposed 1994 modification in *Schoppert* than the earlier one upon which defendant mistakenly relies.

The defendant here could have served a thirty-day written notice on plaintiff, and terminated the contract. Alternatively, it could have said that it intended to do so unless plaintiff signed a modification to the commission structure. However, it did neither.

In sum, the holding in *Schoppert* does not warrant the relief requested by defendant. Issues of fact were framed by the evidence. Construing all the evidence most favorably to plaintiff, there is sufficient evidence in the record to support that portion of the jury's verdict awarding unpaid commissions to plaintiff.

3. *Conclusions re: Defendant's Motions.* For the reasons given, defendant's applica-

tions pertaining to the jury's award for punitive damages and for past-due commissions (both pre-termination and post-termination) are denied. In addition, its application for judgment as a matter of law—as of the conclusion of plaintiff's case in chief, and at the conclusion of all the evidence—is denied, as is its motion for a new trial.

### RELIEF SOUGHT BY PLAINTIFF

In opposing plaintiff's cross-motion for counsel fees, defendant urges that the Sales Act "should not have been before the jury" and that "if the Court disagrees, the claim for attorneys fees clearly is too late." (Def.'s Reply Mem. at 3.)

As mentioned previously, the contract provides that it is to be governed by Illinois law. The Sales Act clearly is applicable to the present proceeding. There is no requirement that the plaintiff include in his pleading reference to the Sales Act as a precondition to seeking counsel fees since the statute, by its terms, provides for such an award.

Plaintiff has submitted a detailed affidavit setting forth the nature of the services performed. Defendant has not challenged the reasonableness of the fees. The Court's independent review of the materials submitted indicates their reasonableness, both as to the nature of the services performed and the hourly rate charged. Accordingly, plaintiff is awarded counsel fees in the amount requested, to wit, $20,361.20.[6]

In addition, plaintiff shall receive prejudgment interest on the portion of the jury's award that pertains to underpaid commissions to place him in the position he would have been had he been paid in a timely fashion. See *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571 (7th Cir.1995); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 559 (7th Cir.1985).

SO ORDERED.

---

6. The Sales Act also provides for "court costs." However, neither party has addressed that issue beyond plaintiff's conclusory request for same. For that reason, the judgment will not include an award for "court costs" under the Illinois statute, or otherwise.