2020 IL App (1st) 190461-U

THIRD DIVISION
September 9, 2020

No. 1-19-0461

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| REAL ESTATE RESOURCE MANAGEMENT, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CH 7033 |
| | ) | |
| 1000 SOUTH MICHIGAN, LLC, and | ) | |
| GUY GARDNER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Adam Wilhite, Third-Party Citation Respondent- | ) | Alexander P. White, |
| Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County; the trial court's decision finding the landlord in contempt for withholding two rent payments and a security deposit alleged to be property of a judgment debtor and its order to turnover the funds to the judgment creditor were not an abuse of discretion.

¶ 2    This is an appeal by a third-party citation respondent in a supplementary proceeding.

Plaintiff sought to collect on a judgment he obtained against defendant Guy Gardner in the

underlying case. Plaintiff issued a citation to discover assets to third-party citation respondent,

Adam Wilhite. In response to the citation, Wilhite denied possessing any property belonging to

Guy. After an evidentiary hearing, the trial court entered an order finding Wilhite possessed property belonging to Guy and entered an order of contempt for failure to turnover funds to plaintiff. Wilhite appealed. For the following reasons we affirm the decision of the trial court.

¶ 3                                    BACKGROUND

¶ 4      On April 13, 2010, a judgment was entered against defendants, 1000 South Michigan, LLC and Guy Gardner, in favor of plaintiff, Real Estate Resource Management, LLC, in the amount of $956,000 stemming from a contract dispute which award was affirmed by this court in a previously filed appeal. See *Real Estate Resource Management, LLC v. 1000 South Michigan, LLC*, No. 1-10-1298 (Ill. 2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5      Third-party respondent Wilhite was the owner and lessor of a townhome located in Chicago (Townhome). He entered into a written lease which listed Guy's wife, Ania Gardner, and his brother, Gary Gardner, as lessees. After the term of the lease expired, Wilhite and Ania agreed to extend the lease for two additional months on a month-to-month basis for January and February 2016. Wilhite also held a security deposit.

¶ 6      On January 21, 2016, Wilhite was served with a third-party citation to discover assets (Citation) in the supplementary proceeding pursuant to section 2-1402 of the Illinois Code of Civil Procedure (Code), 735 ILCS 5/2-1402 (West 2016).

¶ 7      In response to the Citation, Wilhite denied he possessed any property owned by Guy. Wilhite tendered copies of certain checks he received from Guy's brother Gary which he identified as rent payments on the Townhome as well as a security deposit. On May 2, 2017, Wilhite also sat for his deposition.

¶ 8     On June 13, 2017, plaintiff filed a petition for rule to show cause against Wilhite seeking a finding of contempt and immediate turnover of January and February 2016 rents on the Townhome as well as the security deposit.

¶ 9     On September 21, 2017, the trial court commenced a hearing on plaintiff's contempt petition. The record in this matter does not contain a record of proceedings or a bystander's report of the September 21, 2017 proceedings. After hearing testimony and argument, the trial court entered an order denying the request for turnover of February 2016 rent and continued the balance of plaintiff's contempt petition to a future date for further proceedings.

¶ 10     On May 8, 2018, at the hearing on plaintiff's contempt petition, both testimony and argument were again heard by the trial court. On this date, Wilhite testified as the sole witness.

¶ 11     Wilhite testified that at all relevant times, he was the owner of the Townhome located at 1240 W. Monroe Street, Chicago, Illinois. On September 29, 2014, Wilhite rented the Townhome pursuant to a lease agreement executed by Guy's brother Gary and Guy's wife Ania. The approved occupants of the Townhome were Guy's wife and children.

¶ 12     The parties stipulated that the security deposit for the Townhome was paid by Guy's brother Gary in the amount of $2,750 and certain rental payments were made to Wilhite by Guy's brother.

¶ 13     Wilhite testified without objection to various email communications between him and Guy's wife Ania. On January 17, 2016, Wilhite received email correspondence from Ania stating:

> "Thank you, [Wilhite]. I'll let you know by the end of the day. I just want to
> confirm budget with Guy and let [Guy's brother Gary] know about our decision."

¶ 14     On January 18, 2016, Ania sent Wilhite email correspondence stating:

"Guy and I would like to continue our lease at [the Townhome] another month, until the end of February, 2016, at $2,700 per month. Guy, please confirm this information to [Wilhite] via email. Thank you."

¶ 15    On January 25, 2016, Wilhite sent Ania email correspondence stating:

"Ania, I wanted to reach out regarding payment of rent for February. I would ask that if you're paying me by check that it is not a check from an account shared by you and Guy. If that is all you can provide, then I would ask you to get me a cashier's check from the bank. Reason being is that I do not want to be receiving anything from an account Guy is associated with. I have received multiple subpoenas from some attorney asking that I appear in court, and getting a check from an account Guy is associated with will cause me problems that I don't want. He is technically not on the lease as you know, so it needs to come from you or [Guy's brother Gary]. Not sure what the plan was there, but I just wanted to make sure we are all on the same page. Give me a call if you would like to discuss. Thanks."

¶ 16    That same day, Ania sent responsive email correspondence to Wilhite's email stating:

"[Wilhite], I understand. I told Guy that we need to pay cash and that was the only way we could have stayed here another month. It's been very challenging living with Guy, and the main reason for me moving is to physically separate myself from him and his problems. I wasn't aware of until recently."

¶ 17    Wilhite sent a responsive email to Ania the same day thanking her and stating:

"I'm just getting subpoenas almost every week and I don't want to get pulled into it. Glad we're on the same page."

¶ 18     The Townhome was vacated around March 7, 2016.  Wilhite held the security deposit totaling $2,750 for approximately a year.  Wilhite testified there were a lot of damages and the costs of repair for these damages exceeded the security deposit.  Wilhite also testified that he made some improvements to the Townhome in advance of listing it for sale.

¶ 19     Wilhite testified he never received payments or assets from Guy.

¶ 20     On June 12, 2018, the trial court issued its memorandum decision and judgment (Judgment) granting plaintiff's contempt petition and ordering immediate turnover of the security deposit; in an apparent reversal of its earlier ruling, ordered the turnover of January 2016 rent for $2,750.00; and ordered turnover of the February of 2016 rent for $2,750.00.  Thereafter, Wilhite filed a motion to reconsider which was denied on February 7, 2019 and Wilhite's timely appeal followed.

¶ 21                                     ANALYSIS

¶ 22     On appeal, Wilhite argues the trial court erred because (1) he never had possession of an asset belonging to Guy; and (2) the trial court's September 21, 2017 order stating "request for turnover of Feb '16 rent is denied" precluded the trial court from subsequently awarding turnover of both the January and February 2016 rental payments.

¶ 23                                     Jurisdiction

¶ 24     Before we can proceed on the merits of Wilhite's appeal, this court has a duty to consider our own jurisdiction, regardless of whether the parties have raised it as an issue.  *Daewoo International v. Monterio*, 2014 IL App (1st) 140573, ¶ 72.  "Wilhite filed a petition for Supreme Court Rule 137 Sanctions which remained pending and unresolved as of the filing of this appeal.  Thus, the June 12, 2018 order cannot be appealed "unless the particular order comes within one

of the specified exceptions set forth by Supreme Court rule." *Mexicali Club, Inc. v. Illinois Liquor Control Commission*, 37 Ill. App. 3d 797, 799 (1976).

¶ 25 Supreme Court Rule 304(b)(5) provides that "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without a Rule 304(a) finding. Ill. S. Ct. R. 304(b)(5) (eff. March 8, 2016).

> "It is clear from the language of the rule that only contempt judgments that impose a penalty are final, appealable orders. Until the entry of a contempt order imposing a sanction, a contempt petition provides no basis for obtaining immediate appellate jurisdiction over any part of the case under Rule 304(b)(5)."
> *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008).

¶ 26 Rule 304(b)(3) provides for such exception allowing appellate review from orders and judgments that do not dispose of an entire proceeding and states:

> "The following judgments and orders are appealable without [a Rule 304(a) finding] ***
>
> > (3) A final judgment or order entered in a proceeding under section 2-1402 of the Code of Civil Procedure." Ill. Sup. Ct. R. 304(b)(3) (eff. March 8, 2016).

¶ 27 As to a "final judgment or order" in the context of a supplementary proceeding pursuant to section 2-1402 of the Code we note that:

> "[f]ew cases discuss which orders in supplementary proceedings are final orders. [Citation.] Generally, a final order is one that disposes of the parties' rights with respect to either the entire controversy or some definite and separate portion of the controversy. [Citation.] An order in as section 2-1042 proceeding is said to

- 6 -

be final when the citation petitioner is in a position to collect against the judgment debtor or third party, or the citation petitioner has been ultimately foreclosed from doing so. [Citation.]" (Internal quotation marks omitted.) *PNC Bank, N.A. v. Hoffmann*, 2015 IL App (2d) 141172, ¶ 24.

¶ 28    Here the trial court's June 12, 2018 order resolved plaintiff's contempt petition and further required Wilhite to immediately turnover the January and February 2016 rents as well as the security deposit to plaintiff. Because this order had the effect of placing plaintiff in a position to collect against Wilhite – the third-party citation respondent – the Judgment was a final order (after the trial court denied Wilhite's motion to reconsider on February 7, 2019). Thus, review of the Judgment is appropriate pursuant to Rule 304(b)(3) notwithstanding the pending sanctions motion. See *Williams Montgomery & John Limited v. Broaddus*, 2017 IL App (1st) 161063, ¶ 35; see also Ill. Sup. Ct. R. 304(b)(3) (eff. March 8, 2016).

¶ 29                                  Standard of Review

¶ 30    When a contempt appeal is filed, the standard of review is an abuse of discretion. *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 785 (2009). "A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 848 (2010) (quoting *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005)). An abuse of discretion may also be found where the wrong legal standard is applied. *Zavell & Associates, Inc. v. CCA Industries, Inc.*, 257 Ill. App. 3d 319, 322 (1993). We may affirm a decision of the trial court on any basis supported by the record. *Windy City Limousine Company, LLC v. Milazzo*, 2018 IL (1st) 162827, ¶ 77.

¶ 31	The trial court entered its contempt order to compel compliance with its turnover order. "Civil contempt is designed to compel future compliance with a court order and is avoidable through obedience." (Internal quotation marks omitted.) *Emery v. Northeast Illinois Regional Transportation Company*, 374 Ill. App. 3d 974, 977 (2007) (quoting *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 279 (2006).

¶ 32	Third-Party Citations

¶ 33	In addressing Wilhite's claim on appeal that he could not be found in contempt because he was never in possession of Guy's assets, we begin by looking to the mechanism by which this supplementary proceeding was commenced – specifically section 2-1402 of the Code which allowed plaintiff to file the third-party citation to discover assets naming Wilhite as the third-party citation respondent. 735 ILCS 5/2-1402 (West 2016).

¶ 34	Section 2-1402 of the Code permits a judgment creditor to initiate supplementary proceedings and "endows the court with broad powers to compel the application of discovered assets to satisfy a judgment." *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 39. "After the citation is served, the judgment becomes a lien on all nonexempt personal property belonging to the judgment debtor. *Gataric v. Colak*, 2016 IL App (1st) 151281, ¶ 15. The trial court's powers include the power to compel a third-party citation respondent to "turn over assets belonging to the judgment debtor." *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 39. Specifically, "[i]f the record contains some evidence that the third party holds assets of the judgment debtor, '[o]nly then does the citation court have the jurisdiction to order that party to produce those assets to satisfy the judgment.' " *Hayward v. Scorte*, 2020 IL App (1st) 190476, ¶ 30.

¶ 35    Section 2-1402(f)(1) of the Code also allows for restrictive language on a citation preventing the recipient from "interfering with[] any property not exempt from the enforcement of a judgment therefrom *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or  her *** and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first."  735 ILCS 5/2-1402(f)(1) (West 2016).

¶ 36    This section further provides for certain remedies in the event of a violation of the above prohibitions and states:

> "The court may punish any party who violates the restraining provisions of a
> citation as and for a contempt, or if the party is a third party may enter judgment
> against him or her in the amount of the unpaid portion of the judgment and costs
> allowable under this Section, or in the amount of the value of the property
> transferred, whichever is lesser." *Id.*

¶ 37    In examining the purpose of this section, this court recently stated:

> "Subsection (f)(1) ensures that such person who ' "attempt[s] to impede the
> administration of justice, and places the [judgment debtor's] property beyond the
> reach of the court, *** will be punished either by having a judgment entered
> against him for the amount of the unpaid judgment creditor's claim or the value of
> the property, whichever is less, or may be punished as and for contempt." ' "
> *Hayward*, 2020 IL App (1st) 190476, ¶ 28, quoting *Bank of Aspen v. Fox
> Cartage, Inc.*, 126 Ill. 2d 307, 314-15 (1989).

¶ 38    Supreme Court Rule 277(h) which governs section 2-1402 supplementary proceedings further provides for sanctions for the violation of a citation and states as follows:

> "Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt.  Any person who refuses to obey any order to deliver up or convey or assign any personal property or in an appropriate case its proceeds or value or title to lands, or choses in action, or evidences of debt may be committed until he has complied with the order or is discharged by due course of law.  The court may also enforce its order against the real and personal property of that person."  Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013).

¶ 39    Contempt proceedings provide a means to address dissatisfaction with a third-party respondent's compliance in response to a citation.  *Hayward*, 2020 IL App (1st) 190476, ¶ 36.

¶ 40    The Citation at issue here was served on Wilhite on January 21, 2016.  The Citation contained restraining language as provided for in section 2-1402(f)(1) and specifically prevented the interference with any property belonging to Guy.

¶ 41                                2016 Rent Payments

¶ 42    In its order, the trial court highlighted the January and February 2016 rent payments and Wilhite's testimony concerning email correspondence dated January 25, 2016.  Wilhite sent the email to Guy's wife after receiving the Citation requesting a cashier's check for the rent unless it could be paid from an account on which Guy was not associated.  In that correspondence, Wilhite identified the basis for this request being the "multiple subpoenas from some attorneys asking that [he] appear in court [in the instant proceeding]" and further noting that "getting a check from an account Guy was associated with [would] cause [him] problems that [he did not]

- 10 -

want." Wilhite also testified to Guy's wife's responsive email correspondence confirming her conversation with Guy that in order to stay in the Townhome they would need to pay the rent in cash. Wilhite testified to his responsive email stating he was glad they were on the "same page" and referencing not wanting to get "pulled into it" stating he was "getting subpoenas almost every week[.]"

¶ 43 Additionally, Wilhite's testimony concerning earlier email correspondence established that the lease for the months of January and February 2016 were for Guy and his wife. Specifically, the January 18, 2016 email correspondence from Guy's wife stated "Guy and I would like to continue our lease at [the Townhome] another month, until February, 2016, at $2,700 per month." Further, in a January 25, 2016 email to Wilhite, Guy's wife noted "living with Guy" and wanting to "physically separate" from him.

¶ 44 With respect to its contempt finding, the trial court concluded that:

"Wilhite's [January 25, 2016] email is evidence of hindering[] [plaintiff's] citation examination to determine Guy's assets" and "[h]ad Wilhite not instructed [Guy's wife] to pay in cash as stated in the email, there would be no attempt to hinder the citation examination, and [plaintiff] could find out exactly which joint account holder made [the] payment to Wilhite at issue here."

¶ 45 Furthermore, in its Judgment, the trial court concluded that the funds for the rents at issue came from Guy and his wife's joint account basing its reasoning on the aforementioned email exchanges and concluding there would be no need to pay the rents in cash unless the funds came from Guy and his wife's joint account.

¶ 46 The trial court further concluded that the January 2016 rent payment and February 2016 cash rent payment were Guy's assets. On this point, we note that rules governing a joint bank

account establish that "a party to a joint bank account may withdraw and dispense with all of the funds from that account, and neither he nor his estate is liable to the other joint depositors for the withdrawn funds." *In re Estate of Vogel*, 291 Ill. App. 3d 1044, 1048 (1997). Accordingly, the trial court's determination that the rents were Guy's assets which Wilhite received after the service of the Citation was supported by the record and we cannot say no reasonable court would come to the same conclusion. Therefore, we find no abuse of discretion.

¶ 47 The trial court's conclusion is further supported by the fact that the record contains no checks to Wilhite from any source after November 5, 2015 for the amount of $2,700 – the agreed rent amount for January and February 2016 as established by Guy's wife's January 18, 2016 email correspondence. While we note the record does contain a check from Guy's brother to Wilhite dated January 29, 2016 in the amount of $2,950, this check was not introduced at the hearing nor was there testimony explaining the purpose of the check. Accordingly, we cannot say the trial court's conclusion was unsupported by the evidence and was an abuse of discretion, particularly where the email communications between Guy's wife and Wilhite support the trial court's determination.

¶ 48 We also note that the record does not contain a transcript of the proceedings or a bystander's report with respect to the September 21, 2017 hearing at which evidence and argument was elicited with respect to plaintiff's contempt petition. Because Wilhite failed to provide a complete record, we presume the trial court correctly found the rents to be Guy's assets. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (holding "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 49 Based on this contemptuous interference with the Citation, the trial court ordered Wilhite to immediately turn over the January and February 2016 rent payments totaling $2,700 each. We

do not find this punishment to constitute an abuse of discretion particularly where section 2-1402 of the Code expressly prescribes such relief. See 735 ILCS 5/2-1402(f)(1) (West 2016). Section 2-1402 of the Code and Rule 277(h) allow for punishment for contempt upon violation of a Citation. See *id.*; see also Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013). Section 2-1402(f)(1) allows for punishment of a third-party respondent "in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." 735 ILCS 5/2-1402(f)(1) (West 2016). Consistent with section 2-1402(f)(1) of the Code, here the January and February 2016 rents totaled $5,400 which (even with the security deposit) was substantially less than the unpaid judgment totaling $956,0000 and thus was not an abuse of discretion. See *id.*; see also Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013).

¶ 50                                    Security Deposit

¶ 51     Although there was no direct evidence concerning payment of the security deposit in the incomplete record before us, the trial court made a finding the funds paid for the apartment were funds that belonged to Guy. There was evidence the apartment was rented for the benefit of Guy and his family and apparently this finding included the security deposit payment. In this case it is undisputed that Wilhite, the landlord, retained the security deposit for more than a year after the lease ended. Plaintiff points out and it is undisputed that Wilhite did not give written notice of his intent to keep the security deposit money. Although Wilhite claims he performed repair work, there is no evidence that he complied with the requirements of the Chicago Residential Landlord and Tenant Ordinance (RLTO) in regard to giving notice to the tenants of his intent to keep the security deposit.

¶ 52     Section 5-12-080(d) of the RLTO provides for the use of a security deposit for repairs necessitated by the tenant and states in relevant part as follows:

"The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit ***, return to the tenant the security deposit or any balance thereof ***; provided, however, that the landlord, *** may deduct from such security deposit or interest due thereon for the following:

* * * *

(2)   A reasonable amount necessary to repair any damage caused to the premises by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded.  In case of such damage, the landlord shall deliver or mail to the last known address of the tenant within 30 days an itemized statement of the damages allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching copies of the paid receipts for the repair or replacement.  If estimated cost is given, the landlord shall furnish the tenant with copies of paid receipts or a certification of actual costs of repairs of damage if the work was performed by the landlord's employees within 30 days from the date the statement showing estimated cost was furnished to the tenant."  Chicago Municipal Code § 5-5-12-080(d).

¶ 53   "Section 2–1402 authorizes a 'creditor to conduct an examination of a third party [citation], and upon a showing that the third party is holding assets belonging to the judgment debtor, empowers the court to summarily compel the application of discovered assets or income to the satisfaction of the judgment, as long as the judgment debtor would have the right to

- 14 -

recover such assets from the third party.' " *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009) (quoting *Mid–American Elevator Company, Inc. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 587 (1996)).

¶ 54    Here, since it is undisputed that Wilhite failed to comply with the requirements of the RLTO with regard to keeping the security deposit, we find Guy would prevail over Wilhite in a claim for the security deposit. Therefore, the security deposit is considered an asset which can be applied toward the outstanding debt.

¶ 55    We also note that the record does not contain a transcript of the proceedings or a bystander's report with respect to the September 21, 2017 hearing at which evidence and argument was elicited with respect to plaintiff's contempt petition. Because Wilhite failed to provide a complete record, we presume the trial court correctly found the security deposit to be an asset belonging to defendant. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (holding "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 56    We cannot say no reasonable court would determine that the security deposit was an asset belonging to Guy or that Guy had a superior right to the security deposit over Wilhite. Therefore, we cannot say the trial court abused its discretion in requiring Wilhite to turn over the value of the security deposit. As noted above, this court may affirm the trial court on any basis supported by the record. *Windy City Limousine Company, LLC*, 2018 IL (1st) 162827, ¶ 77.

¶ 57    The trial court's order requiring turnover of the security deposit is affirmed.

¶ 58                                  September 21, 2017 Order

¶ 59    Wilhite next argues that the trial court's September 21, 2017 order precludes the Judgment requiring turnover of the January and February 2016 rent payments. We note that the

January 21, 2017 order only addresses plaintiff's claim for the turnover of February 2016 rent payment. Accordingly, the September 21, 2017 order had no impact on the trial court's order requiring turnover of the January 2016 rent payment or the security deposit.

¶ 60    Notwithstanding, the September 21, 2017 order was an interlocutory order addressing only one part of plaintiff's contempt petition. "An interlocutory order may be modified or vacated at any time before final judgment." (Internal quotation marks omitted.) *Berry v. Chade Fashions, Inc.*, 383 Ill. App. 3d 1005, 1009 (2008). "Although the trial court should carefully consider vacating a prior order, it may do so to correct an error." *Id.* A trial court is also permitted to *sua sponte* vacate even a final order within 30 days of the entry of judgment while it maintains jurisdiction over the proceeding. *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652, 656 (1979). "The court's authority to act on its own motion to amend or vacate a final order or judgment has long been recognized" but is restricted to instances where action is required "to do justice between the parties." *Id.*

¶ 61    When the trial court *sua sponte* modified the September 21, 2017 order, it had jurisdiction of the matter. There is no language in the September 21, 2017 order making it final and appealable and the order itself continued the balance of plaintiff's contempt petition to a future date. Moreover, as set forth above, the trial court's subsequent finding that the February 2017 rent was Guy's asset was supported by the record. Furthermore, we cannot say no reasonable court would find Wilhite in contempt and require turnnover of the February 2016 rent. Therefore, the order was not an abuse of discretion. Accordingly, the trial had authority to vacate the interlocutory September 21, 2017 order after hearing the evidence at the May 8, 2018 hearing to do justice between the parties. See *id.*

¶ 62     Again, we note the record does not contain a transcript of the proceedings or a bystander's report with respect to the September 21, 2017 hearing and thus, we are unable to determine why the trial court entered the order.  Because Wilhite failed to provide a complete record, we presume the trial court correctly reversed its earlier order notwithstanding the evidence elicited at the earlier hearing.  See *Foutch*, 99 Ill. 2d at 392 (holding "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 63                                         CONCLUSION

¶ 64     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 65     Affirmed.