STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-37

JcN - CuM- 1/7/2014 ✓

JOHN E. McDONALD, JR.,

        Plaintiff,

v.

SCITEC, INC., TELEMATRIX, INC.,
and CETIS, INC.,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
(Exemplary Damages, Attorney Fees,
Motion for Attachment)

This matter is before the Court on three post-trial issues: Plaintiff's request for exemplary damages and statutory attorney fees pursuant to the Illinois Sales Representative Act (the Act), 820 ILL. COMP. STAT. ANN. 120/0.01-3 (West, Westlaw through P.A. 98-604 of the 2013 Reg. Sess.), and Plaintiff's motion for attachment. Plaintiff seeks $151,968.04 in attorney fees, and has submitted the affidavit of Attorney Michael Donlan in support of his request. In addition, Plaintiff seeks $249,603.75 in exemplary damages. Plaintiff has moved to attach the Defendants' property in the amount of $318,370.54, which amount reflects the sum Plaintiff seeks in attorney fees and exemplary damages less $83,201.25 that was paid by Defendants on October 24, 2013.

I.     Entitlement to Remedies Under the Act

On September 20, 2013, the Court determined that Plaintiff qualified as a sales representative as contemplated by the Act.[1] The Act requires that "[a]ll commissions due at the

---

[1] The Court's decision came after the Law Court determined that Plaintiff was entitled to $83,201.25 in commission payments pursuant to his contract with Defendant Scitec and remanded the matter to this Court to consider Plaintiff's claim under the Act. *McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 19, 79 A.3d 374.

1

time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due." 820 ILL. COMP. STAT. ANN. 120/2. With respect to both exemplary damages and attorney fees, the Act provides:

> A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

820 ILL. COMP. STAT. ANN. 120/3.

The record established that Defendant Scitec stopped paying Plaintiff sales commissions on the Avaya account after Plaintiff initiated this lawsuit and Defendant Scitec terminated its agreement with Plaintiff. Although Plaintiff made other claims against Defendant Scitec, the only claim and issue at trial was whether Plaintiff was entitled to commission payments on sales to Avaya after the termination of the agreement. The Law Court's determination that Plaintiff was entitled to those commission payments, *see McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 19, 79 A.3d 374, and this Court's conclusion that the Act applied to Plaintiff establish that Defendant Scitec's non-payment of the commissions violated section 2 of the Act. The issue, therefore, is whether the record also supports an award of exemplary damages.

With respect to exemplary damages, courts interpreting the Act have concluded that "[n]o automatic award of exemplary damages is granted for every violation of the Act."[2] *Installco Inc.*

---

[2] Arguably, section 3 of the Act is written to require the imposition of exemplary damages upon a finding that a principal violated section 2. *See* 820 ILL. COMP. STAT. ANN. 120/2 ("A principal who fails to comply with the provisions of Section 2 . . . *shall* be liable in a civil action for exemplary damages . . ." (emphasis added)). Nevertheless, this interpretation has been soundly rejected. *See Zavell & Assocs., Inc. v. CCA Indus., Inc.*, 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993) (reversing the award of exemplary damages upon a trial court's determination that exemplary damages were mandatory under the Act and no egregious conduct was present).

2

*v. Whiting Corp.*, 784 N.E.2d 312, 320 (Ill. App. Ct. 2002) (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000 (Ill. App. Ct. 1994)). Instead, "the standard for awarding [exemplary] damages is willful or wanton conduct or vexatious refusal to pay." *Zavell & Assocs., Inc. v. CCA Indus., Inc.*, 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993). Only "a finding of culpability that exceeds bad faith" warrants an award of exemplary damages. *Maher*, 640 N.E.2d at 1008. For example, in *Knowlton v. Viktron Limited Partnership*, 994 F. Supp. 128, 131 (E.D.N.Y. 1998), the withholding of commission payments as leverage to renegotiate a contract with the sales representative was sufficient to justify a jury's award of exemplary damages under the Act. An honest dispute over fees or the meaning of a contractual provision, however, does not give rise to an award of exemplary damages. *See id.* at 131.

Although Plaintiff contends that Defendants "vexatiously refused" to pay him commissions after the initiation of the lawsuit, the Court considers the dispute between the parties to be a legitimate legal dispute over the duration of a contract, which dispute was ultimately resolved by the Law Court.[3] In particular, the Court finds no "culpability that exceeds bad faith." *Maher*, 640 N.E.2d at 1008. The Court, therefore, concludes that Plaintiff is not entitled to an award of exemplary damages.

Unlike exemplary damages, courts have interpreted the attorney fee provision as compensatory, and not punitive, requiring no showing of culpability after a violation of the Act has been proven. *See Maher*, 640 N.E.2d at 1009. Plaintiff is thus entitled to reasonable attorney fees and costs incurred in pursuit of the commissions recoverable under the Act.

---

[3] After the Court determined that the parties' agreement was ambiguous, the jury concluded that under the terms of the parties' agreement, Plaintiff was not entitled to recover on his claim for unpaid commissions. While the Law Court concluded that the agreement was not ambiguous and remanded the case for the entry of judgment in Plaintiff's favor, the Law Court's decision does not cause the Court to alter its assessment of the legitimacy of the parties' dispute.

3

In their opposition to Plaintiff's request for an award of attorney fees, Defendants assert that Plaintiff may only recover fees incurred litigating the applicability of the Act and when the commissions should have been paid. Because a claim under the Act presupposes a valid contract, Defendants assert that the attorneys' fees generated in connection with Plaintiff's effort to establish the existence of such a contract and the right to commissions are not recoverable. The Court is not persuaded by Defendants' argument.

Courts that have considered a recovery of attorney fees under the Act have clearly found that fees incurred establishing the right to the commissions are recoverable. For example, in *Gramercy Mills, Inc. v. Wolens*, the court reasoned that "in order to recover the commissions owing to him, [the sales representative] had to defeat the claims which [the principal] relied on as absolving it from any obligation to pay the commissions," and thus allowed the recovery of fees incurred for pursuing the representative's "own claim for commissions and . . . for defending against" the principal's challenges to those commissions. 1996 WL 562460, at *2 (N.D. Ill. Sept. 30, 1996). Similarly, in *Liu v. T & H Machine, Inc.*, the court stated that the plaintiff sales representative was entitled to attorney fees for being forced to sue for monies owed him when the principal had denied his entitlement to the commissions at all. 191 F.3d 790, 799 (7th Cir. 1999). These courts' reasoning and conclusions are sound. To permit Plaintiff to recover fees incurred in his effort to establish the existence of a contract that required Defendants to pay the disputed commissions is logical and consistent with the apparent objectives of the Act (i.e., to provide incentive for the prompt payment of earned sales commissions).

While Plaintiff is entitled to recover fees generated in his effort to secure his earned commissions, he is not entitled to fees incurred on claims that were dismissed prior to trial or that were unrelated to his entitlement to commission payments. *See Gramercy Mills, Inc.*, 1996 WL

4

562460, at *2 (preventing recovery pursuant to the Act for attorney fees incurred on an unrelated misrepresentation claim and wrongful termination claim); *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 30, 901 A.2d 189 ("Parties are required to apportion their attorney fees between the claims for which fees may be awarded and the claims for which there is no entitlement to fees.").

II.     Reasonableness of Fees

Defendants challenge the reasonableness of the fees claimed by Plaintiff. Whether the entitlement to attorney fees is based in statute or contract, a determination on the reasonableness of the fees sought is guided by several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Mancini v. Scott*, 2000 ME 19, ¶ 10, 744 A.2d 1057 (quoting *Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884 (Me. 1984)). As the fee movant, Plaintiff "bears the burden of proof for the amount of hours reasonably expended" and "the burden of producing evidence to establish the reasonable hourly attorney fee." *Mowles v. Me. Comm'n on Govtl. Ethics & Election Practices*, 2009 WL 1747859 (Me. Super. Apr. 10, 2009) (Crowley, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

In this case, the parties have identified three distinct time periods for which Plaintiff seeks to recover fees: April 14, 2010, to April 27, 2011; April 29, 2011, to October 11, 2011; and October 14, 2011 to October 27, 2013. The Court will address Plaintiff's request in this context.

5

A.     Termination of the contract to filing of motion to enlarge the dispositive motion deadline: April 14, 2010, to April 27, 2011

During this time period, Plaintiff incurred $42,858.50 in attorney fees.  Plaintiff seeks only to recover, however, $6,428.77, or 15% of the fees incurred.  In his affidavit, Attorney Donlan estimates that of the time spent during this period, 15% of those hours were related to the Act and the post-termination commissions.  (Donlan Aff. ¶ 12.)  Defendants object that estimating time spent on claims pertinent to the Act is not sufficient and note that very few of the time entries make any reference the Act or post-termination claims.

Plaintiff did not assert his claim under the Act until his Amended Complaint, which was deemed filed on August 2, 2010.  Even if the Court accepted Plaintiff's 15% estimate, the Court would not allow recovery for any time prior to the amendment.[4]

Upon review, however, the Court is not convinced that Plaintiff's estimate of 15% represents time spent devoted to claims related to the Act.  Only one time entry (dated January 25, 2011) after the amendment to the complaint reflects any work related to the Act, and the Court cannot discern through that entry the amount of time that was dedicated to issues related to the Act.[5]  The balance of the entries are general descriptions that give the Court no guidance about the nature of the work, including which work was devoted to claims related to post-termination commissions and claims that were dismissed prior to trial.  *See Advanced Constr. Corp.*, 2006 ME 84, ¶ 27, 901 A.2d 189 (noting the inadequacy of general descriptions of billing entries that do not distinguish between fee claims and non-fee claims); *Poussard*, 479 A.2d at 886 (indicating that a fee applicant "should maintain billing time records in a manner

---

[4] This would result in the reduction of time in the following amounts: 2.1 hours for Attorney Knowles; 0.3 hours for Attorney Fouts; and 24.1 hours for Attorney Donlan.

[5] That entry lists 2.10 hours spent by Attorney Fouts: "Further draft mediation statement and research relevant points of law, including relevant provisions of the Illinois Sale Representative Act."

6

that will enable a reviewing court to identify distinct claims" (quoting *Hensley*, 461 U.S. at 436)).

The lack of specific reference to work related to the Act is not a mere technical deficiency in a case in which Plaintiff asserted multiple claims. During this time period, Plaintiff still had a declaratory judgment claim pending regarding the status of Teledex under the parties' contract, an issue that was not related to the post-termination commissions. Moreover, the fee claims and non-fee claims do not arise from a common set of facts such that disentangling work performed on each type of claim would make separation impossible. *See Advanced Constr. Corp.*, 2006 ME 84, ¶ 32, 901 A.2d 189. In short, the Court determines that Plaintiff has not sustained his burden of demonstrating which work, if any, was devoted to his claim under the Act. Accordingly, the Court will not allow a recovery of fees for this time period.

B.    Filing of motion to enlarge the dispositive motion deadline to decision on motion for summary judgment: April 29, 2011, to October 11, 2011

During this time period, Plaintiff incurred $36,748.50 in attorney fees. As with the previous time period, Plaintiff seeks only to recover $5,512.27, which figure represents Attorney Donlan's estimate that 15% of the time spent during this period was related to the Act and the post-termination commissions. (Donlan Aff. ¶ 14.) The record evidence includes the same infirmities of the previous period. *See Advanced Constr. Corp.*, 2006 ME 84, ¶¶ 30-32, 901 A.2d 189; *Poussard*, 479 A.2d at 886. The Court incorporates the reasoning of section II(A), *supra*, by reference and similarly does not allow recovery for any fees during this time period.

C.    Decision on summary judgment to filing of attorney fee application: October 14, 2011, to October 27, 2013

During this time period, Plaintiff incurred $140,027.00 in attorney fees and seeks to recover all these fees. After the Court's decision on summary judgment, the remaining issues in

the case focused on Plaintiff's entitlement to post-termination commissions on the Avaya account. Thus, there is no concern over allocating fees between claims pursuant to the Act and claims that do not entitle Plaintiff to attorney fees. The work performed is plainly related to Plaintiff's claim under the Act. The only issue for the Court is the reasonableness of the fees.

Defendants raise a number of challenges to the reasonableness of the fees incurred in this time period. Defendants do not, however, challenge any of the fees incurred during the course of the trial. The Court has reviewed the trial-related fees, and concludes that the fees are reasonable.

Turning to Defendants' challenges, Defendants first argue that the hourly rates charged by Attorney Knowles of over $300 in 2011, 2012, and 2013 exceed the maximum rate that Maine courts have found to be reasonable. Second, Defendants assert that Attorney Donlan and Knowles appear to have engaged in a de facto practice of only billing by ½ hour or 1 hour increments. Finally, Defendants contend that Plaintiff's counsel billed excessive time on the Law Court appeal (188 hours) and in rebriefing the issues surrounding the Act after the remand (42 hours). Defendants argue that that Court should reduce these two categories of fees by one half.

1.    *Excessive hourly rate*

Defendants argue that the hourly rates charged by Attorney Knowles of over $300 in 2011, 2012, and 2013 exceed the maximum rate that Maine courts have found to be reasonable. Attorney Knowles's hourly billing rate was $325, $350, and $365 for 2011, 2012, and 2013, respectively. Defendants assert that the maximum hourly rate for an experienced Maine attorney approved by a court is $300. *See IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 195 (D. Me. 2012) ("a reasonable hourly rate for experienced Maine-based counsel is around $300");

*Desena v. LePage*, 847 F. Supp. 2d 207, 212 n.4 (Me. 2012) (accepting a rate of $295 per hour based on "comparably credentialed Maine counsel"); *see also Helwig v. Intercoast Career Inst.*, 2013 WL 5628638 (Me. Super. Sept. 18, 2013) (Wheeler, J.) (approving an hourly rate of $300 as reasonable on a statutory claim for attorney fees).

Defendants further argue that Plaintiff has failed to justify an hourly rate of over $300 by providing affidavits from non-interested lawyers. Instead, the only evidence of the reasonability of the rate is from the affidavit of Attorney Donlan himself: "I believe these hourly rates are fair and reasonable for attorneys, paralegals and legal professionals of similar background, training, and experience in Maine." (Donlan Aff. ¶ 6.) *Cf. Mowles*, 2009 WL 1747859 (noting the submission of affidavits of both counsel of record and other practitioners in the area regarding hourly rates).

When assessing the reasonableness of fees in the context of an award of fees, the First Circuit's observations are instructive:

> Perhaps the capstone of appellant's remonstrance is its insistence that the district court abandoned a market-based standard and penalized CLF's trial counsel—one of Boston's largest and most prominent law firms—for providing the same level of effort in this case as it would have mobilized in a major litigation for a private corporate client. We do not question counsel's good faith, but where fee-shifting is involved, the situation is different in at least one very material respect:
>
>> [In private practice] the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses. The . . . fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party.
>
> *Blum*, 465 U.S. at 895–96 n.11, 104 S.Ct. at 1547 n.11. Thus, the private market can at best "afford relevant comparisons." *Id.* And there is no single "reasonable" fee. The term connotes a range rather than an absolute. As we have said in an analogous context, borrowing Emerson's description of nature, reasonableness "is a mutable cloud, which is always and never the same." *Sierra Club v. Sec'y of the Army*, 820 F.2d 513, 517 (1st Cir. 1987).

*United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988).

Consistent with the First Circuit's reasoning, the Court's determination should not be limited to an assessment of the value of an attorney's services to a client. Indeed, a client's willingness to pay a certain hourly rate can be influenced by a number of factors (e.g., personal relationships, prior representation) that might be unrelated to the client's needs or the attorney's work on the pertinent case.

Here, the only evidence of reasonableness is the opinion of Plaintiff's counsel, without corroboration from a source not affiliated with Plaintiff or Plaintiff's counsel. While the Court does not question the sincerity of the opinion, the absence of corroboration is a factor the Court must consider. Based on the record before the Court, and the legal authority presented, the Court determines that a reasonable hourly rate for Attorney Knowles' services is the $300 hourly rate endorsed by other courts in Maine.[6]

### 2. *Billing increments*

Defendants also assert that Attorneys Donlan and Knowles appear to have engaged in a de facto practice of only billing by ½ hour or 1 hour increment, resulting in excessive time billed. Defendants note that over 70% of Attorney Donlan's billing entries and over 45% of Attorney Knowles's billing entries end in a "0" or "5." Defendants argue that logically, only about 20% of the entries should end in a "0" or "5."

The Court has reviewed the time entries of both attorneys and is unconvinced of the merit of Defendants' argument. A review of the record reveals entries that range from 0.1 hour to

---

[6] The Court's determination should not be construed to suggest that it is unreasonable for Attorney Knowles and his clients to agree to an hourly rate in excess of $300 per hour. In the Court's experience, Attorney Knowles is an experienced, respected, and highly competent member of the Maine bar. As mentioned above, however, the Court must consider reasonableness in the fee-shifting context where the party responsible for paying the fee did not contract to pay the fee. *See United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988).

10

more than an hour. Simply stated, the Court does not find the individual time entries to be inconsistent with the work described.

### 3. *Excessive hours billed on Law Court appeal*

Defendants challenge the number of hours billed on the appeal of this matter to the Law Court. Plaintiff filed his notice of appeal on May 29, 2012. Oral argument on the appeal was held on April 10, 2013. The Law Court issued its opinion on May 30, 2013, and, upon motion of the Plaintiff, issued a revised opinion on June 20, 2013. The Court considers the time between May 30, 2012, and June 19, 2103, as the time period that was devoted to the appeal. During this time, Attorney Knowles billed 9.1 hours; Attorney Donlan billed 77 hours; and Attorney Coburn billed 128.4 hours. Attorney Knowles and Donlan are partners at Verrill Dana; Attorney Coburn is an associate. The hourly rates of the three attorneys, respectively, in 2012 and 2013 were: $350 and $365; $265 and $280; and $155 and $165. With Attorney Knowles' hourly rate reduced to $300, the amount of fees for the appeal is $44,252.

The principal issue on appeal was whether the parties' contract unambiguously entitled Plaintiff to commissions on Avaya sales after Defendant Scitec unilaterally terminated the agreement. *McDonald*, 2013 ME 59, ¶ 9, 79 A.3d 374. While the issues on appeal were not necessarily novel, the issues were not without some complexity. Moreover, insofar as Plaintiff's entitlement to past and future income was dependent upon the outcome of the case, Plaintiff's counsel cannot be faulted for devoting significant resources to the appeal. Prosecution of the appeal required Plaintiff's counsel to review the trial record to identify and preserve all of the appellate issues, conduct additional legal research, compose an appellate brief, prepare a rely brief, and prepare for and attend oral argument.

11

Not insignificantly, Attorney Coburn, who billed at the lowest rate among the attorneys who worked on the appeal, performed the majority of the work. Given their experience and familiarity with the case, Attorneys Knowles and Donlan likely could have performed the work more efficiently; however, the hourly rate would have been substantially higher. Nevertheless, the Court finds the number of hours devoted to the appeal by Attorney Coburn to be high under the circumstances, particularly given the significant time that Attorney Donlan devoted to the appeal.[7] The Court will therefore reduce the recovery to allow for only 90 hours of the time Attorney Coburn worked on the appeal.[8]

### 4. *Excessive hours billed on remand on the Act*

In their final challenge to Plaintiff's request for attorneys' fees, Defendants assert that the number of hours worked on the case after remand in briefing issues related to the Act is excessive because it was an issue that had been briefed to this Court and to the Law Court. Defendants calculated that Plaintiff's counsel spent 42.7 hours to prepare 13 pages of briefing at a cost of $10,092. Defendants do not explain how they calculated the figure of 42.7 hours, but based on the Court's calculations, that figure is consistent with the amount of time billed between July 8, 2013, and August 8, 2013, by Attorneys Knowles, Donlan, and Coburn. Between those two dates, Attorney Knowles billed 1.1 hours; Attorney Donlan billed 26.1 hours; and Attorney Coburn billed 16.8 hours, combining for a total of 44 hours and $10,410.[9]

---

[7] The Court does not suggest that Attorney Coburn performed unnecessary work, or that all of his work was not of value. The Court appreciates that a lesser-experienced attorney who was not directly involved in the trial will have to devote more time to the appeal than an experienced attorney who participated in the trial. The Court also recognizes the importance, for a legal practice and for the legal profession, of involving relatively new attorneys in all aspects of the practice of law, including appellate practice. In the fee-shifting context, however, the Court must acknowledge that there are some inefficiencies in such a process, and the non-prevailing party should not be responsible for those inefficiencies.

[8] Attorney Coburn billed 63 hours in 2012 at the rate of $155/hour, and billed 65.4 hours in 2013 at the rate of $165/hour. Because Attorney Coburn billed almost the same number of hours in each year, the Court allocated one-half of the reduction to 2012 and one-half of the reduction to 2013.

[9] This amount is calculated with Attorney Knowles's rate at $300/hour.

12

More broadly, from the remand to up to and including the motion for attorney fees, Plaintiff seeks $23,811 in attorney fees, representing 5.1 hours billed by Attorney Knowles, 51.6 hours billed by Attorney Donlan, 26.9 hours billed by Attorney Coburn, and 21.9 hours billed by Attorney Thibodeau.[10] Since remand, the parties have submitted two rounds briefing on the Act and Plaintiffs submitted the present motion for fees.

Although the parties briefed some of the issues prior to the appeal, upon remand, the parties were required to engage in the further briefing process. Given that the issue required Plaintiff to convince the Court of the interpretation and applications of an Illinois statute, with which the Maine courts are not conversant, and given the potential significance of the statute's application (i.e., exemplary damages, attorney fees), Plaintiff's counsel understandably invested a relatively significant amount of time to the matter. Under the circumstances, the Court does not find the number of hours to be unreasonable.

III.    Attachment Motion

Plaintiff has also moved for attachment and trustee process. Pursuant to M.R. Civ. P. 4A and 4B, a court may approve an order of attachment or trustee process after notice to the defendant, a hearing, and

> upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see* M.R. Civ. P. 4B(c) (containing nearly identical language regarding trustee process). The "more likely than not" standard is "a greater than 50% chance of prevailing." *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996) (quotation marks omitted).

---

[10] This amount is calculated with Attorney Knowles's rate at $300/hour.

13

Having concluded that Plaintiff is entitled to attorney fees but not exemplary damages, Plaintiff has demonstrated a likelihood of success on part of its claim. The Court, therefore, will grant the attachment in the amount of the attorney fees awarded.

IV.    Conclusion

Based upon the foregoing analysis, the Court orders:

1.    Plaintiff is not entitled to exemplary damages pursuant to the Act;

2.    Plaintiff is awarded $131,328 in reasonable attorney fees pursuant to the Act; and

3.    Plaintiff's motion for attachment is granted in the amount of $131,328.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/7/14

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 1/6/14
Copies sent via Mail ___ Electronically ✓

14

**John E. McDonald, Jr. v. Scitec, Inc., Telematrix, Inc., and Cetis, Inc.**
**BCD-CV-10-37**


**John E. McDonald, Jr.**
   **Petitioners / Plaintiffs**

      Counsel:                    Michael Donlan, Esq.
                                  Verrill Dana LLP
                                  One Portland Square
                                  Portland, ME 04112


**Scitec, Inc.**
   **Respondents / Defendants**

      Counsel:                    Randall Weill, Esq.
                                  Preti, Flaherty, Beliveau, Pachios LLP
                                  One City Center
                                  PO Box 9546
                                  Portland, ME 04112

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-37
JCN – C Um – 10/14/2011

JOHN E. MCDONALD, JR.,

        Plaintiff,

      v.

SCITEC, INC., TELEMATRIX, INC., and
CETIS, INC.,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
(Partial Motion for Summary Judgment)

Defendants Scitec, Inc., Telematrix, Inc., and Cetis, Inc. (collectively, the "Defendants") move for partial summary judgment on Plaintiff John E. McDonald, Jr.'s Second Amended Complaint. Specifically, Defendants seek: 1) summary judgment on Count I, a declaratory judgment action regarding the status of Teledex, Inc.; 2) partial summary judgment on Counts III, IV, and VI regarding any claims by McDonald that he is due commissions with respect to Teledex; and 3) partial summary judgment on Counts III, IV, and VI regarding any claims by McDonald that he is due commissions for transactions occurring after the termination of the parties' agreement.

## I.    BACKGROUND

The following facts are undisputed except where noted. Scitec was formed by Dr. Bing Sun in 1993 and, by 1998, became a manufacturer of telephones. (Defs.' Supp. S.M.F. ¶¶ 1-2; Pl.'s Opp. S.M.F. ¶¶ 1-2.) Scitec purchased the assets of Telematrix, another telephone manufacturing company and one of Scitec's competitors, and began operating a new entity called Telematrix. (Defs.' Supp. S.M.F. ¶ 3; Pl.'s Opp. S.M.F. ¶ 3.) Telematrix and Scitec operated as

separate entities until December 31, 2009, when they merged to form Cetis. (Defs.' Supp. S.M.F. ¶¶ 4-5; Pl.'s Opp. S.M.F. ¶¶ 4-5.)

McDonald and Scitec entered into a commission agreement (the "Agreement") on April 8, 2002, by which McDonald would be paid a commission for bringing business to Scitec through third parties with which McDonald had or would establish business contacts (the "Contacts"). (Defs.' Supp. S.M.F. ¶¶ 9-11; Pl.'s Opp. S.M.F. ¶¶ 9-11.) The Agreement is governed by Illinois law. (Defs.' Supp. S.M.F. ¶ 18; Pl.'s Opp. S.M.F. ¶ 18.)

Under the Agreement, Scitec or Dr. Sun could approve or deny a contact. (Defs.' Supp. S.M.F. ¶ 13; Pl.'s Opp. S.M.F. ¶ 13.) Pursuant to the Agreement, Scitec agreed to "pay McDonald an amount equal to five percent (5%) of the product sales only (excluding shipping and handling, sales taxes, use taxes, other taxes) paid to [Scitec] by the Contacts, up to the gross amount of $5,000,000" within the prior 12-month period. (Defs.' Supp. S.M.F. ¶ 15; Pl.'s Opp. S.M.F. ¶ 15.) The Agreement further states that "For all gross amounts over $5,000,000 paid to [Scitec] by the Contacts, within the prior twelve-month period, [Scitec] shall pay to McDonald four percent (4%) of such amounts." (Defs.' Supp. S.M.F. ¶ 16; Pl.'s Opp. S.M.F. ¶ 16.)

As to duration, the Agreement states: "Payment for gross amounts paid to [Scitec] by any Contacts shall continue until the earlier of five (5) years after the Agreement is terminated upon mutual agreement or the Contact receives any amounts from a competitor of [Scitec] as the result of an introduction by McDonald to the competitor for a product that McDonald has introduced for [Scitec]." (Defs.' Supp. S.M.F. ¶ 20; Pl.'s Opp. S.M.F. ¶ 20.) Finally, the Agreement includes a survival clause, which provides: "Sections 2, 3, and 6-9 shall survive any termination or expiration of this Agreement." (Pl.'s A.S.M.F. ¶ 65; Defs.' Reply S.M.F. ¶ 65.)

2

Until November of 2002, McDonald owned a company that served as a distributor for Teledex LLC, a telephone supplier and one of Scitec's competitors. (Defs.' Supp. S.M.F. ¶ 23; Pl.'s Opp. S.M.F. ¶ 23; Pl's A.S.M.F. ¶ 11; Defs.' Reply S.M.F. ¶¶ 11, 16.) In January 2003, Scitec approved Teledex as a Contact under the Agreement. (Defs.' Supp. S.M.F. ¶ 25; Pl.'s Opp. S.M.F. ¶ 25; Pl's A.S.M.F. ¶ 16; Defs.' Reply S.M.F. ¶ 16.) In 2003 and 2004, McDonald spoke with Teledex about the possibility of Scitec acquiring Teledex; McDonald arranged a meeting between Scitec and Teledex in May of 2004, but no agreement was reached. (Pl.'s A.S.M.F. ¶¶ 17-23 ; Defs.' Reply S.M.F. ¶¶ 17-23.)

In the summer of 2009, Teledex was in significant financial trouble, and Telematrix entered into negotiations with GE Capital, the holder of Teledex's debt, to acquire Teledex's debt. (Defs.' Supp. S.M.F. ¶¶ 32-34; Pl.'s Opp. S.M.F. ¶¶ 32-34; Pl.'s A.S.M.F ¶ 24; Defs.' Reply S.M.F. ¶ 24.) TMX Funding, a subsidiary of Telematrix, was set up to acquire Teledex's debt from GE Capital. (Defs.' Supp. S.M.F. ¶ 39; Pl.'s Opp. S.M.F. ¶ 39; Pl.'s A.S.M.F. ¶ 43; Defs.' Reply S.M.F. ¶ 43.) TMX Funding acquired the debt of Teledex on December 7, 2009, and then foreclosed on the debt. (Defs.' Supp. S.M.F. ¶¶ 40-41; Pl.'s Opp. S.M.F. ¶¶ 40-41.) Teledex's assets were sold to TMX Funding at public foreclosure auction on December 18, 2009. (Pl.'s A.S.M.F. ¶ 44; Defs.' Reply S.M.F. ¶ 44.) After the purchase, Scitec and Telematrix merged into Cetis. (Pl.'s A.S.M.F. ¶ 47; Defs.' Reply S.M.F. ¶ 47.) The parties dispute at which point in 2009 that McDonald learned of Defendants' purchase of Teledex, but McDonald had no knowledge of the details regarding the transaction. (Defs.' Supp. S.M.F. ¶¶ 46-47; Pl.'s Opp. S.M.F. ¶¶ 46-47.)

Cetis phones are marketed in the United States using the Teledex brand name, but are not marketed as Teledex in China. (Defs.' Supp. S.M.F. ¶¶ 51-52; Pl.'s Opp. S.M.F. ¶¶ 51-52.)

3

Between January 2010 and January 2011, Defendants reported $7,323,565.74 in gross sales of Teledex related products. (Pl.'s A.S.M.F. ¶ 56; Defs.' Reply S.M.F. ¶ 56.) Cetis terminated the Agreement on April 8, 2010 (Pl.'s A.S.M.F. ¶ 60; Defs.' Reply S.M.F. ¶¶ 59-60.), and has ceased making commission payments to McDonald. (Pl.'s A.S.M.F. ¶ 68; Defs.' Reply S.M.F. ¶ 68).

McDonald initiated this litigation on April 7, 2010. McDonald's Second Amended Complaint contains five remaining counts: 1) declaratory judgment action, pursuant to 14 M.R.S. §§ 5951-63 (2009), regarding the status of Teledex (Count I); 2) breach of contract for failure to pay commissions (Count III); 3) conversion of unpaid commission payments (Count IV); 4) punitive damages (Count V); and 5) violations of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. 120/0.01 to 120/3 (LEXIS through 2011 Legis. Sess.) (Count VI). The Court (*Humphrey, C.J.*) dismissed Count II, a breach of contract claim for unlawful termination of the commission agreement, in a prior order. The Court heard oral argument on the pending motion on September 20, 2011.

## II.    DISCUSSION

A party may obtain summary judgment if there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). To withstand a defendant's motion for summary judgment, "the plaintiff must establish a prima facie case for each element of her cause of action. If a plaintiff does not present sufficient evidence on the essential elements . . . the defendant is entitled to a summary judgment." *Blake v. State*, 2005 ME 32, ¶ 4, 868 A.2d 234, 237 (quotation marks omitted). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. A factual issue is genuine when there is sufficient

4

supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. If ambiguities in the facts exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

Defendants seek partial summary judgment on McDonald's remaining claims for commissions with respect to Teledex and on any claims for commissions for transactions that occurred after the termination date of the Agreement (April 8, 2010). Although Defendants also requested summary judgment on Count VI, in which McDonald alleges violations of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. 120/0.01 to 120/3, Defendants make no reference of the Act in their supporting memorandum of law.[1] Particularly in the absence of a substantive argument on the application of the Act, the Court is not convinced that summary judgment is appropriate on Count VI.

A.    Commissions on transactions with Teledex

Defendants seek partial summary judgment on whether McDonald is entitled to commissions on any transactions with Teledex. The record establishes that Teledex was an approved Contact under the Agreement. Pursuant to the Agreement, Scitec agreed to "pay McDonald an amount equal to five percent (5%) of the product sales only . . . *paid to [Scitec] by the Contacts*, up to the gross amount of $5,000,000" within the prior 12-month period. (Defs.' Supp. S.M.F. ¶ 15; Pl.'s Opp. S.M.F. ¶ 15 (emphasis added).) Defendants argue that although Scitec approved Teledex, Scitec never sold any products to Teledex or manufactured any products for Teledex. Citing the language of the Agreement, which they contend is clear and unambiguous, Defendants argue that there "has never been a commissionable event giving rise to

---

[1] Because McDonald presented a substantive argument in his opposition to the motion, Defendants addressed the argument in their reply memorandum.

any obligation to pay any commissions to McDonald on account of any sales by Scitec or Cetis to Teledex." McDonald contends that the Agreement is ambiguous. In support of his argument, McDonald relies in part on the Court's decision on Defendants' motion to dismiss Count II.

First, the Court is not persuaded that the law of the case doctrine establishes that the pertinent contract language is ambiguous.[2] The law of the case doctrine "is an articulation of the sound policy that a trial judge should not in the same case overrule or reconsider the decision of another trial judge." *Anderson v. O'Rourke*, 2008 ME 42, ¶ 13 n.1, 942 A.2d 680, 684. The doctrine "relates only to questions of law, and it operates only in subsequent proceedings in the same case." *Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979). McDonald argues that in its decision on the motion to dismiss Count II, the Court (*Humphrey, C.J.*) determined that the Agreement was ambiguous. The court disagrees. The issue presented in the motion to dismiss was whether the Agreement could be read to include commission payments to McDonald for sales of both products and services from a Contact to Scitec. On that narrow issue, the Court determined that the contract language was ambiguous because the parties used inconsistent terminology regarding the scope of the Agreement. The Court did not conclude that the entire agreement was ambiguous, nor did the Court address the issue squarely here: whether a sale to a Contact is a prerequisite to McDonald earning a commission.

With respect to the Agreement, McDonald maintains that "product sales" could include transactions between related entities, such as Teledex and Scitec. At oral argument, McDonald explained that TMX Funding, a subsidiary of Telematrix and the entity that acquired Teledex's debt, is now in fact Teledex. Telematrix subsequently merged with Scitec to form Cetis, and Cetis is now selling Teledex-branded telephones. McDonald argues that there must have been

---

[2] Illinois law governs the Agreement, but McDonald has argued "law of the case" under Maine principles, to which Defendants did not object. The court will thus consider McDonald's law of the case arguments pursuant to Maine law.

6

some sale between Teledex/TMX and Scitec/Cetis, thus qualifying the acquisition of Teledex/TMX as a commissionable event under the Agreement.

The principles of contract interpretation under Illinois law are familiar:

> The primary objective in construing a contract is to give effect to the intent of the parties. A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent. Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others. . . . If the language of the contract is susceptible to more than one meaning, it is ambiguous. In that case, a court may consider extrinsic evidence to ascertain the parties' intent.

*Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (citations omitted); *accord Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 26, 1 A.3d 416, 424. Viewed in the context of the entire Agreement, the payment provision unambiguously provides that before any commission is due to McDonald, a Contact must pay Scitec money in exchange for products or services. The record fails to establish the existence of any such qualifying sale between Teledex and Scitec. Although McDonald argues that the Agreement's scope is more than just "sales," the language of the Agreement is unambiguous. "[T]he language of a contract alone . . . is the best indication of the parties' intent." *Gallagher*, 874 A.2d at 58. Because McDonald has not shown any sale (regardless of the form) in which Teledex paid Scitec or its successor for products or services or raised an issue of material fact as to the existence of such a sale, there was no commissionable event with respect to Teledex. Accordingly, Defendants are entitled to summary judgment on that issue. *See Blake*, 2005 ME 32, ¶ 4, 868 A.2d at 237.

II.     Commissions on Transactions Occurring After the Termination of the Agreement

Defendants also contend that partial summary judgment is warranted because the Agreement is clear on the circumstances under which McDonald is entitled to continue receiving commission payments after its termination. Section 2 of the Agreement states:

7

> Payment for gross amounts paid to [Scitec] by any Contacts shall continue until the earlier of five (5) years after the Agreement is terminated upon mutual agreement or the Contact receives any amounts from a competitor of [Scitec] as the result of an introduction by McDonald to the competitor for a product that McDonald has introduced for [Scitec].

(Defs.' Supp. S.M.F. ¶ 20; Pl.'s Opp. S.M.F. ¶ 20.) Defendants make two arguments in support of their argument that McDonald is not entitled to commissions after the date of the Agreement's termination. Defendants first argue that McDonald was only entitled to receive continued commission payments for five years after termination of the Agreement if the Agreement had been terminated by mutual agreement. Because Cetis unilaterally terminated the Agreement, Defendants contend there is no right to continued payment. Defendants also argue that because the contract is terminable at will, all provisions within the Agreement expired when Cetis terminated the Agreement. The Agreement also includes a survival clause, which provides: "Sections 2, 3, and 6-9 shall survive any termination or expiration of this Agreement." (Pl.'s A.S.M.F. ¶ 65; Defs.' Reply S.M.F. ¶ 65.)

Based on the record before the Court, summary judgment is not warranted on this issue. The Agreement contemplates two events could result in the termination of McDonald's right to continued commission payments: the passage of 5 years after mutual termination of the agreement; or a Contact receiving payment from a competitor of Scitec based on an introduction from McDonald. Upon review of the summary judgment record, the Court is not convinced either condition has been established. In particular, the record does not establish that the parties mutually terminated the Agreement, nor does the record establish that a Contact received payment from a competitor of Scitec based on an introduction from McDonald. Material facts remain in dispute, therefore, as to the circumstances under which McDonald's right to receive commissions was to end under the terms of the Agreement.

8

Based on the foregoing analysis, the Court orders:

1.  The Court grants Defendants' motion for partial summary judgment in part and enters judgment in favor of Defendants Scitec, Inc., Telematrix, Inc., and Cetis, Inc. on Count I of the Second Amended Complaint, declaring that McDonald is not entitled to any commissions related to Teledex because there has been no commissionable event with respect to Teledex.

2.  The Court denies Defendants' motion for partial summary judgment on all other issues and Counts of the Second Amended Complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 10/14/11

Justice, Maine Business & Consumer Court

9

CV-10-37

John E. McDonald, Jr. v. Scitec, et al

Plaintiff: Michael Donlan – Verrill Dana

Defendants: Randall Weill – Preti Flaherty

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-37
JcN - Cum - 1/7 2014

)
JOHN E. McDONALD, JR.,                )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )          **DECISION AND ORDER**
                                       )        (Exemplary Damages, Attorney Fees,
SCITEC, INC., TELEMATRIX, INC.,        )              Motion for Attachment)
and CETIS, INC.,                       )
                                       )
            Defendants                 )
                                       )

This matter is before the Court on three post-trial issues: Plaintiff's request for exemplary damages and statutory attorney fees pursuant to the Illinois Sales Representative Act (the Act), 820 ILL. COMP. STAT. ANN. 120/0.01-3 (West, Westlaw through P.A. 98-604 of the 2013 Reg. Sess.), and Plaintiff's motion for attachment. Plaintiff seeks $151,968.04 in attorney fees, and has submitted the affidavit of Attorney Michael Donlan in support of his request. In addition, Plaintiff seeks $249,603.75 in exemplary damages. Plaintiff has moved to attach the Defendants' property in the amount of $318,370.54, which amount reflects the sum Plaintiff seeks in attorney fees and exemplary damages less $83,201.25 that was paid by Defendants on October 24, 2013.

I.      Entitlement to Remedies Under the Act

On September 20, 2013, the Court determined that Plaintiff qualified as a sales representative as contemplated by the Act.[1] The Act requires that "[a]ll commissions due at the

---

[1] The Court's decision came after the Law Court determined that Plaintiff was entitled to $83,201.25 in commission payments pursuant to his contract with Defendant Scitec and remanded the matter to this Court to consider Plaintiff's claim under the Act. *McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 19, 79 A.3d 374.

1

time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due." 820 ILL. COMP. STAT. ANN. 120/2. With respect to both exemplary damages and attorney fees, the Act provides:

> A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

820 ILL. COMP. STAT. ANN. 120/3.

The record established that Defendant Scitec stopped paying Plaintiff sales commissions on the Avaya account after Plaintiff initiated this lawsuit and Defendant Scitec terminated its agreement with Plaintiff. Although Plaintiff made other claims against Defendant Scitec, the only claim and issue at trial was whether Plaintiff was entitled to commission payments on sales to Avaya after the termination of the agreement. The Law Court's determination that Plaintiff was entitled to those commission payments, *see McDonald v. Scitec, Inc.*, 2013 ME 59, ¶ 19, 79 A.3d 374, and this Court's conclusion that the Act applied to Plaintiff establish that Defendant Scitec's non-payment of the commissions violated section 2 of the Act. The issue, therefore, is whether the record also supports an award of exemplary damages.

With respect to exemplary damages, courts interpreting the Act have concluded that "[n]o automatic award of exemplary damages is granted for every violation of the Act."[2] *Installco Inc.*

---

[2] Arguably, section 3 of the Act is written to require the imposition of exemplary damages upon a finding that a principal violated section 2. *See* 820 ILL. COMP. STAT. ANN. 120/2 ("A principal who fails to comply with the provisions of Section 2 . . . *shall* be liable in a civil action for exemplary damages . . ." (emphasis added)). Nevertheless, this interpretation has been soundly rejected. *See Zavell & Assocs., Inc. v. CCA Indus., Inc.*, 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993) (reversing the award of exemplary damages upon a trial court's determination that exemplary damages were mandatory under the Act and no egregious conduct was present).

2

*v. Whiting Corp.*, 784 N.E.2d 312, 320 (Ill. App. Ct. 2002) (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000 (Ill. App. Ct. 1994)). Instead, "the standard for awarding [exemplary] damages is willful or wanton conduct or vexatious refusal to pay." *Zavell & Assocs., Inc. v. CCA Indus., Inc.*, 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993). Only "a finding of culpability that exceeds bad faith" warrants an award of exemplary damages. *Maher*, 640 N.E.2d at 1008. For example, in *Knowlton v. Viktron Limited Partnership*, 994 F. Supp. 128, 131 (E.D.N.Y. 1998), the withholding of commission payments as leverage to renegotiate a contract with the sales representative was sufficient to justify a jury's award of exemplary damages under the Act. An honest dispute over fees or the meaning of a contractual provision, however, does not give rise to an award of exemplary damages. *See id.* at 131.

Although Plaintiff contends that Defendants "vexatiously refused" to pay him commissions after the initiation of the lawsuit, the Court considers the dispute between the parties to be a legitimate legal dispute over the duration of a contract, which dispute was ultimately resolved by the Law Court.[3] In particular, the Court finds no "culpability that exceeds bad faith." *Maher*, 640 N.E.2d at 1008. The Court, therefore, concludes that Plaintiff is not entitled to an award of exemplary damages.

Unlike exemplary damages, courts have interpreted the attorney fee provision as compensatory, and not punitive, requiring no showing of culpability after a violation of the Act has been proven. *See Maher*, 640 N.E.2d at 1009. Plaintiff is thus entitled to reasonable attorney fees and costs incurred in pursuit of the commissions recoverable under the Act.

---

[3] After the Court determined that the parties' agreement was ambiguous, the jury concluded that under the terms of the parties' agreement, Plaintiff was not entitled to recover on his claim for unpaid commissions. While the Law Court concluded that the agreement was not ambiguous and remanded the case for the entry of judgment in Plaintiff's favor, the Law Court's decision does not cause the Court to alter its assessment of the legitimacy of the parties' dispute.

3

In their opposition to Plaintiff's request for an award of attorney fees, Defendants assert that Plaintiff may only recover fees incurred litigating the applicability of the Act and when the commissions should have been paid. Because a claim under the Act presupposes a valid contract, Defendants assert that the attorneys' fees generated in connection with Plaintiff's effort to establish the existence of such a contract and the right to commissions are not recoverable. The Court is not persuaded by Defendants' argument.

Courts that have considered a recovery of attorney fees under the Act have clearly found that fees incurred establishing the right to the commissions are recoverable. For example, in *Gramercy Mills, Inc. v. Wolens*, the court reasoned that "in order to recover the commissions owing to him, [the sales representative] had to defeat the claims which [the principal] relied on as absolving it from any obligation to pay the commissions," and thus allowed the recovery of fees incurred for pursuing the representative's "own claim for commissions and . . . for defending against" the principal's challenges to those commissions. 1996 WL 562460, at *2 (N.D. Ill. Sept. 30, 1996). Similarly, in *Liu v. T & H Machine, Inc.*, the court stated that the plaintiff sales representative was entitled to attorney fees for being forced to sue for monies owed him when the principal had denied his entitlement to the commissions at all. 191 F.3d 790, 799 (7th Cir. 1999). These courts' reasoning and conclusions are sound. To permit Plaintiff to recover fees incurred in his effort to establish the existence of a contract that required Defendants to pay the disputed commissions is logical and consistent with the apparent objectives of the Act (i.e., to provide incentive for the prompt payment of earned sales commissions).

While Plaintiff is entitled to recover fees generated in his effort to secure his earned commissions, he is not entitled to fees incurred on claims that were dismissed prior to trial or that were unrelated to his entitlement to commission payments. *See Gramercy Mills, Inc.*, 1996 WL

4

562460, at *2 (preventing recovery pursuant to the Act for attorney fees incurred on an unrelated misrepresentation claim and wrongful termination claim); *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 30, 901 A.2d 189 ("Parties are required to apportion their attorney fees between the claims for which fees may be awarded and the claims for which there is no entitlement to fees.").

## II.     Reasonableness of Fees

Defendants challenge the reasonableness of the fees claimed by Plaintiff. Whether the entitlement to attorney fees is based in statute or contract, a determination on the reasonableness of the fees sought is guided by several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Mancini v. Scott*, 2000 ME 19, ¶ 10, 744 A.2d 1057 (quoting *Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884 (Me. 1984)). As the fee movant, Plaintiff "bears the burden of proof for the amount of hours reasonably expended" and "the burden of producing evidence to establish the reasonable hourly attorney fee." *Mowles v. Me. Comm'n on Govtl. Ethics & Election Practices*, 2009 WL 1747859 (Me. Super. Apr. 10, 2009) (Crowley, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

In this case, the parties have identified three distinct time periods for which Plaintiff seeks to recover fees: April 14, 2010, to April 27, 2011; April 29, 2011, to October 11, 2011; and October 14, 2011 to October 27, 2013. The Court will address Plaintiff's request in this context.

5

A.   Termination of the contract to filing of motion to enlarge the dispositive motion
     deadline: April 14, 2010, to April 27, 2011

During this time period, Plaintiff incurred $42,858.50 in attorney fees.  Plaintiff seeks

only to recover, however, $6,428.77, or 15% of the fees incurred.  In his affidavit, Attorney

Donlan estimates that of the time spent during this period, 15% of those hours were related to the

Act and the post-termination commissions.   (Donlan Aff. ¶ 12.)   Defendants object that

estimating time spent on claims pertinent to the Act is not sufficient and note that very few of the

time entries make any reference the Act or post-termination claims.

Plaintiff did not assert his claim under the Act until his Amended Complaint, which was

deemed filed on August 2, 2010.  Even if the Court accepted Plaintiff's 15% estimate, the Court

would not allow recovery for any time prior to the amendment.[4]

Upon review, however, the Court is not convinced that Plaintiff's estimate of 15%

represents time spent devoted to claims related to the Act.  Only one time entry (dated January

25, 2011) after the amendment to the complaint reflects any work related to the Act, and the

Court cannot discern through that entry the amount of time that was dedicated to issues related to

the Act.[5]  The balance of the entries are general descriptions that give the Court no guidance

about the nature of the work, including which work was devoted to claims related to

post-termination commissions and claims that were dismissed prior to trial.  *See Advanced

Constr. Corp.*, 2006 ME 84, ¶ 27, 901 A.2d 189 (noting the inadequacy of general descriptions

of billing entries that do not distinguish between fee claims and non-fee claims); *Poussard*, 479

A.2d at 886 (indicating that a fee applicant "should maintain billing time records in a manner

---

[4] This would result in the reduction of time in the following amounts: 2.1 hours for Attorney Knowles; 0.3 hours for Attorney Fouts; and 24.1 hours for Attorney Donlan.

[5] That entry lists 2.10 hours spent by Attorney Fouts: "Further draft mediation statement and research relevant points of law, including relevant provisions of the Illinois Sale Representative Act."

6

that will enable a reviewing court to identify distinct claims" (quoting *Hensley*, 461 U.S. at 436)).

The lack of specific reference to work related to the Act is not a mere technical deficiency in a case in which Plaintiff asserted multiple claims. During this time period, Plaintiff still had a declaratory judgment claim pending regarding the status of Teledex under the parties' contract, an issue that was not related to the post-termination commissions. Moreover, the fee claims and non-fee claims do not arise from a common set of facts such that disentangling work performed on each type of claim would make separation impossible. *See Advanced Constr. Corp.*, 2006 ME 84, ¶ 32, 901 A.2d 189. In short, the Court determines that Plaintiff has not sustained his burden of demonstrating which work, if any, was devoted to his claim under the Act. Accordingly, the Court will not allow a recovery of fees for this time period.

B.    Filing of motion to enlarge the dispositive motion deadline to decision on motion for summary judgment: April 29, 2011, to October 11, 2011

During this time period, Plaintiff incurred $36,748.50 in attorney fees. As with the previous time period, Plaintiff seeks only to recover $5,512.27, which figure represents Attorney Donlan's estimate that 15% of the time spent during this period was related to the Act and the post-termination commissions. (Donlan Aff. ¶ 14.) The record evidence includes the same infirmities of the previous period. *See Advanced Constr. Corp.*, 2006 ME 84, ¶¶ 30-32, 901 A.2d 189; *Poussard*, 479 A.2d at 886. The Court incorporates the reasoning of section II(A), *supra*, by reference and similarly does not allow recovery for any fees during this time period.

C.    Decision on summary judgment to filing of attorney fee application:  October 14, 2011, to October 27, 2013

During this time period, Plaintiff incurred $140,027.00 in attorney fees and seeks to recover all these fees. After the Court's decision on summary judgment, the remaining issues in

7

the case focused on Plaintiff's entitlement to post-termination commissions on the Avaya account. Thus, there is no concern over allocating fees between claims pursuant to the Act and claims that do not entitle Plaintiff to attorney fees. The work performed is plainly related to Plaintiff's claim under the Act. The only issue for the Court is the reasonableness of the fees.

Defendants raise a number of challenges to the reasonableness of the fees incurred in this time period. Defendants do not, however, challenge any of the fees incurred during the course of the trial. The Court has reviewed the trial-related fees, and concludes that the fees are reasonable.

Turning to Defendants' challenges, Defendants first argue that the hourly rates charged by Attorney Knowles of over $300 in 2011, 2012, and 2013 exceed the maximum rate that Maine courts have found to be reasonable. Second, Defendants assert that Attorney Donlan and Knowles appear to have engaged in a de facto practice of only billing by ½ hour or 1 hour increments. Finally, Defendants contend that Plaintiff's counsel billed excessive time on the Law Court appeal (188 hours) and in rebriefing the issues surrounding the Act after the remand (42 hours). Defendants argue that that Court should reduce these two categories of fees by one half.

### 1. *Excessive hourly rate*

Defendants argue that the hourly rates charged by Attorney Knowles of over $300 in 2011, 2012, and 2013 exceed the maximum rate that Maine courts have found to be reasonable. Attorney Knowles's hourly billing rate was $325, $350, and $365 for 2011, 2012, and 2013, respectively. Defendants assert that the maximum hourly rate for an experienced Maine attorney approved by a court is $300. *See IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 195 (D. Me. 2012) ("a reasonable hourly rate for experienced Maine-based counsel is around $300");

8

*Desena v. LePage*, 847 F. Supp. 2d 207, 212 n.4 (Me. 2012) (accepting a rate of $295 per hour based on "comparably credentialed Maine counsel"); *see also Helwig v. Intercoast Career Inst.*, 2013 WL 5628638 (Me. Super. Sept. 18, 2013) (Wheeler, J.) (approving an hourly rate of $300 as reasonable on a statutory claim for attorney fees).

Defendants further argue that Plaintiff has failed to justify an hourly rate of over $300 by providing affidavits from non-interested lawyers. Instead, the only evidence of the reasonability of the rate is from the affidavit of Attorney Donlan himself: "I believe these hourly rates are fair and reasonable for attorneys, paralegals and legal professionals of similar background, training, and experience in Maine." (Donlan Aff. ¶ 6.) *Cf. Mowles*, 2009 WL 1747859 (noting the submission of affidavits of both counsel of record and other practitioners in the area regarding hourly rates).

When assessing the reasonableness of fees in the context of an award of fees, the First Circuit's observations are instructive:

> Perhaps the capstone of appellant's remonstrance is its insistence that the district court abandoned a market-based standard and penalized CLF's trial counsel—one of Boston's largest and most prominent law firms—for providing the same level of effort in this case as it would have mobilized in a major litigation for a private corporate client. We do not question counsel's good faith, but where fee-shifting is involved, the situation is different in at least one very material respect:
>
> > [In private practice] the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses. The ... fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party.
>
> *Blum*, 465 U.S. at 895–96 n.11, 104 S.Ct. at 1547 n.11. Thus, the private market can at best "afford relevant comparisons." *Id.* And there is no single "reasonable" fee. The term connotes a range rather than an absolute. As we have said in an analogous context, borrowing Emerson's description of nature, reasonableness "is a mutable cloud, which is always and never the same." *Sierra Club v. Sec'y of the Army*, 820 F.2d 513, 517 (1st Cir. 1987).

9

*United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988).

Consistent with the First Circuit's reasoning, the Court's determination should not be limited to an assessment of the value of an attorney's services to a client. Indeed, a client's willingness to pay a certain hourly rate can be influenced by a number of factors (e.g., personal relationships, prior representation) that might be unrelated to the client's needs or the attorney's work on the pertinent case.

Here, the only evidence of reasonableness is the opinion of Plaintiff's counsel, without corroboration from a source not affiliated with Plaintiff or Plaintiff's counsel. While the Court does not question the sincerity of the opinion, the absence of corroboration is a factor the Court must consider. Based on the record before the Court, and the legal authority presented, the Court determines that a reasonable hourly rate for Attorney Knowles' services is the $300 hourly rate endorsed by other courts in Maine.[6]

### 2. *Billing increments*

Defendants also assert that Attorneys Donlan and Knowles appear to have engaged in a de facto practice of only billing by ½ hour or 1 hour increment, resulting in excessive time billed. Defendants note that over 70% of Attorney Donlan's billing entries and over 45% of Attorney Knowles's billing entries end in a "0" or "5." Defendants argue that logically, only about 20% of the entries should end in a "0" or "5."

The Court has reviewed the time entries of both attorneys and is unconvinced of the merit of Defendants' argument. A review of the record reveals entries that range from 0.1 hour to

---

[6] The Court's determination should not be construed to suggest that it is unreasonable for Attorney Knowles and his clients to agree to an hourly rate in excess of $300 per hour. In the Court's experience, Attorney Knowles is an experienced, respected, and highly competent member of the Maine bar. As mentioned above, however, the Court must consider reasonableness in the fee-shifting context where the party responsible for paying the fee did not contract to pay the fee. *See United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988).

more than an hour. Simply stated, the Court does not find the individual time entries to be inconsistent with the work described.

### 3.    *Excessive hours billed on Law Court appeal*

Defendants challenge the number of hours billed on the appeal of this matter to the Law Court. Plaintiff filed his notice of appeal on May 29, 2012. Oral argument on the appeal was held on April 10, 2013. The Law Court issued its opinion on May 30, 2013, and, upon motion of the Plaintiff, issued a revised opinion on June 20, 2013. The Court considers the time between May 30, 2012, and June 19, 2103, as the time period that was devoted to the appeal. During this time, Attorney Knowles billed 9.1 hours; Attorney Donlan billed 77 hours; and Attorney Coburn billed 128.4 hours. Attorney Knowles and Donlan are partners at Verrill Dana; Attorney Coburn is an associate. The hourly rates of the three attorneys, respectively, in 2012 and 2013 were: $350 and $365; $265 and $280; and $155 and $165. With Attorney Knowles' hourly rate reduced to $300, the amount of fees for the appeal is $44,252.

The principal issue on appeal was whether the parties' contract unambiguously entitled Plaintiff to commissions on Avaya sales after Defendant Scitec unilaterally terminated the agreement. *McDonald*, 2013 ME 59, ¶ 9, 79 A.3d 374. While the issues on appeal were not necessarily novel, the issues were not without some complexity. Moreover, insofar as Plaintiff's entitlement to past and future income was dependent upon the outcome of the case, Plaintiff's counsel cannot be faulted for devoting significant resources to the appeal. Prosecution of the appeal required Plaintiff's counsel to review the trial record to identify and preserve all of the appellate issues, conduct additional legal research, compose an appellate brief, prepare a rely brief, and prepare for and attend oral argument.

11

Not insignificantly, Attorney Coburn, who billed at the lowest rate among the attorneys who worked on the appeal, performed the majority of the work. Given their experience and familiarity with the case, Attorneys Knowles and Donlan likely could have performed the work more efficiently; however, the hourly rate would have been substantially higher. Nevertheless, the Court finds the number of hours devoted to the appeal by Attorney Coburn to be high under the circumstances, particularly given the significant time that Attorney Donlan devoted to the appeal.[7] The Court will therefore reduce the recovery to allow for only 90 hours of the time Attorney Coburn worked on the appeal.[8]

### 4. *Excessive hours billed on remand on the Act*

In their final challenge to Plaintiff's request for attorneys' fees, Defendants assert that the number of hours worked on the case after remand in briefing issues related to the Act is excessive because it was an issue that had been briefed to this Court and to the Law Court. Defendants calculated that Plaintiff's counsel spent 42.7 hours to prepare 13 pages of briefing at a cost of $10,092. Defendants do not explain how they calculated the figure of 42.7 hours, but based on the Court's calculations, that figure is consistent with the amount of time billed between July 8, 2013, and August 8, 2013, by Attorneys Knowles, Donlan, and Coburn. Between those two dates, Attorney Knowles billed 1.1 hours; Attorney Donlan billed 26.1 hours; and Attorney Coburn billed 16.8 hours, combining for a total of 44 hours and $10,410.[9]

---

[7] The Court does not suggest that Attorney Coburn performed unnecessary work, or that all of his work was not of value. The Court appreciates that a lesser-experienced attorney who was not directly involved in the trial will have to devote more time to the appeal than an experienced attorney who participated in the trial. The Court also recognizes the importance, for a legal practice and for the legal profession, of involving relatively new attorneys in all aspects of the practice of law, including appellate practice. In the fee-shifting context, however, the Court must acknowledge that there are some inefficiencies in such a process, and the non-prevailing party should not be responsible for those inefficiencies.

[8] Attorney Coburn billed 63 hours in 2012 at the rate of $155/hour, and billed 65.4 hours in 2013 at the rate of $165/hour. Because Attorney Coburn billed almost the same number of hours in each year, the Court allocated one-half of the reduction to 2012 and one-half of the reduction to 2013.

[9] This amount is calculated with Attorney Knowles's rate at $300/hour.

More broadly, from the remand to up to and including the motion for attorney fees, Plaintiff seeks $23,811 in attorney fees, representing 5.1 hours billed by Attorney Knowles, 51.6 hours billed by Attorney Donlan, 26.9 hours billed by Attorney Coburn, and 21.9 hours billed by Attorney Thibodeau.[10] Since remand, the parties have submitted two rounds briefing on the Act and Plaintiffs submitted the present motion for fees.

Although the parties briefed some of the issues prior to the appeal, upon remand, the parties were required to engage in the further briefing process. Given that the issue required Plaintiff to convince the Court of the interpretation and applications of an Illinois statute, with which the Maine courts are not conversant, and given the potential significance of the statute's application (i.e., exemplary damages, attorney fees), Plaintiff's counsel understandably invested a relatively significant amount of time to the matter. Under the circumstances, the Court does not find the number of hours to be unreasonable.

III.    Attachment Motion

Plaintiff has also moved for attachment and trustee process. Pursuant to M.R. Civ. P. 4A and 4B, a court may approve an order of attachment or trustee process after notice to the defendant, a hearing, and

> upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see* M.R. Civ. P. 4B(c) (containing nearly identical language regarding trustee process). The "more likely than not" standard is "a greater than 50% chance of prevailing." *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996) (quotation marks omitted).

---

[10] This amount is calculated with Attorney Knowles's rate at $300/hour.

13

Having concluded that Plaintiff is entitled to attorney fees but not exemplary damages, Plaintiff has demonstrated a likelihood of success on part of its claim. The Court, therefore, will grant the attachment in the amount of the attorney fees awarded.

IV. Conclusion

Based upon the foregoing analysis, the Court orders:

1. Plaintiff is not entitled to exemplary damages pursuant to the Act;

2. Plaintiff is awarded $131,328 in reasonable attorney fees pursuant to the Act; and

3. Plaintiff's motion for attachment is granted in the amount of $131,328.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/7/14

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 1/6/14
Copies sent via Mail ___ Electronically ✓

14

**John E. McDonald, Jr. v. Scitec, Inc., Telematrix, Inc., and Cetis, Inc.**
**BCD-CV-10-37**

**John E. McDonald, Jr.**
   **Petitioners / Plaintiffs**

   Counsel:                    Michael Donlan, Esq.
                              Verrill Dana LLP
                              One Portland Square
                              Portland, ME 04112

**Scitec, Inc.**
   **Respondents / Defendants**

   Counsel:                    Randall Weill, Esq.
                              Preti, Flaherty, Beliveau, Pachios LLP
                              One City Center
                              PO Box 9546
                              Portland, ME 04112